## WHITE v. VAN HORN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF TEXAS.

No. 261. Submitted April 5, 1895. — Decided June 3, 1895.

It is competent to explain by proof declarations of a privy in interest,
admitted in evidence without objection, although they might have been
found inadmissible, if objected to.

An objection going to the effect, and not to the admissibility of evidence,
should be disregarded.

A request to instruct a verdict for the defendant should be disregarded
when the evidence is conflicting.

A request to charge may be disregarded when the court has already fully
instructed the jury on the point.

The court should refuse to charge upon a purely hypothetical statement of
facts, calculated to mislead the jury.

The law of Texas in regard to forgery considered.

An objection to one of a number of charges is unavailable when the charge,
taken as a whole, fairly states the question which the jury is to decide by
preponderance of proof.

When the defendant in an action of ejectment in Texas sets up that his
title was founded on a warranty deed, and has the warrantor summoned
in to defend, and the plaintiff recovers judgment, the defendant may
have judgment against the warrantor for the amount of the purchase
money, with interest from the day of the sale.

3

ON the 2d of October, 1889, widow Martha Ann Van Horn, Elizabeth Evans, and her husband, David B. Evans, all three citizens of the State of Missouri, and Mary Ann Boling, and her husband, W. W. Boling, citizens of the State of Kentucky, brought an action against Joseph L. White, a citizen of Hill County, State of Texas. The action was one of ejectment to recover a certain tract of land, situated in Hill County. The plaintiffs claimed to be the owners of an undivided third each of the land for which they sued.

The defendant excepted to the petition upon the ground that it set out no cause of action, and then filed a general denial. He next pleaded limitations, under the law of Texas, of 1, 3, and 5 years; he averred his purchase and possession of the property in good faith, and alleged that he had put improvements thereon worth $1125, for the value of which improvements he prayed judgment in the event of his eviction. In addition, he averred that he and George G. White, on the 20th day of May, 1882, purchased the property in controversy under a warranty deed from W. R. Baker for $1230 cash, and their note, due on the first day of December, 1882, for $2460, bearing ten per cent interest from date until paid; that they paid this note before maturity, with interest amounting to the sum of $2570; that one-half of the total sum of the purchase money, or $1900, was paid by him, and that Baker, as his warrantor, was liable, in the event of his eviction, to refund the same, with eight per cent interest from the date of the respective payments. He further alleged that on the 6th day of October, 1883, he bought from George G. White, for $3789, the undivided half which had been acquired by the latter as above stated, and that George G. White also warranted the title, and would therefore be obliged to repay him, if the plaintiffs recovered, the amount of the purchase price, with interest. The prayer was that Baker and White be called in warranty to defend the suit, and that if it was decided that the plaintiffs were the rightful owners of the property, there might be a judgment over against Baker for the amount of the price paid him, with interest at the rate of eight per cent from the dates of the payments, and a like judgment against White, with interest from the 6th of October, 1883.

Baker, in response to the call in warranty, filed a plea to the jurisdiction of the court, on the ground that he was not, at the time of the service of the petition, an inhabitant of the Northern District of Texas. Subsequently, the death of Baker being suggested, his executors were made parties defendant to the call in warranty, and the same judgment was prayed against them which had been asked against him. The executors reiterated the plea to the jurisdiction filed by Baker, and in addition, demurred on the ground (1) of no cause of action ; (2) because the defendant could not sue them on the warranty until actually evicted; and (3) because a call in warranty could not be engrafted on an action of ejectment, the sole purpose of which was the settlement of the controversy between the parties plaintiff and defendant, in regard to their title to the property. The executors also insisted that, even if they should be held liable, under the call in warranty, they owed no interest from the date of the sale, because White had been in the enjoyment of the property from the time of his purchase. George G. White submitted his rights to the court with consent that if the case should be decided in favor of the plaintiffs, judgment should be entered against him for such amount as the court might deem proper. On the 25th of April, 1890, the plaintiffs filed their replication to the defendant's plea of limitations, in which they set out that they, the plaintiffs, claimed the property in controversy as the heirs at law of J. H. Chism, and that at the time of the taking of possession of the land in controversy, by the defendant, and those under whom he claimed, two of the plaintiffs, Mrs. Boling and Mrs. Evans, were married women, and consequently the statute of limitations did not run against them. The replication contained the further averment : "Said plaintiffs further show that the defendants, on their claim of title to the land in controversy, deraign their title through a forged pretended deed of conveyance, to wit, a pretended deed which defendants claim is a transfer of the head-right certificate, by virtue of which the land in controversy was patented by the State of Texas to J. H. Chism, and, therefore, in law said pleas of three and five years' limitations cannot prevail."

The demurrer to the jurisdiction of the court to entertain the call in warranty was overruled, and the case was tried by a jury, resulting in a verdict for the plaintiffs for the whole amount of the land claimed and $350 rent. There was also a verdict in favor of the defendant for $750, as an allowance for improvements, and against the estate of Baker, under the calls in warranty, for $3690, with interest at eight per cent from October 2, 1887, and against George W. White for the sum of $3789, with interest from October 6, 1883, at eight per cent. After an ineffectual effort to obtain a new trial, the defendant, Joseph L. White, brought the case by error here, making as parties, defendants in error, the original plaintiffs, the executors of Baker, and George G. White.

The undisputed facts were as follows: The plaintiffs are the sole legal heirs of James Harvey Chism, who served in the army of Texas during her war with Mexico. In reward for his services there were two land certificates issued to him in the name of "J. H. Chism." The first, known as "a bounty certificate," numbered 4298, was certified on the 15th day of September, 1838, and covered 1280 acres of land. The other was "a head-right certificate," issued by the Board of Land Commissioners of Harrisburg County, in the following form:

"THE REPUBLIC OF TEXAS, }
"COUNTY OF HARRISBURG. }
"No. 990.                                                     Class 2.

"This is to certify that J. H. Chism has appeared before us, the Board of Land Commissioners for the county aforesaid, and proved according to law that he arrived in this Republic subsequent to the declaration of independence and previous to August, 1836, and that he is a single man, and produced an honorable discharge, is entitled to one-third of a league of land to be surveyed after the 1st day of August, 1838.

"Given under our hands, at Houston, this 1st day of November, 1838.

"J. G. HUTCHINSON, *President.*
"JOHN WOODRUFF, *Associate Commissioner.*

"Attest: THOS. WM. WARD, *Clerk.*"

On the 31st day of October, 1838, J. H. Chism, by a deed drawn in the county of Harrisburg, sold to R. B. Dobbins, for the sum of $500, the bounty certificate for 1280 acres of land first above mentioned. The clerk of the Board of Land Commissioners for Harrisburg County, in the performance of his duty under the Texas law, made a return of the issue of the head-right certificate, describing it as "a second class certificate, No. 990, issued in November, 1838, to J. H. Chism for one-third of a league of land." In 1840, Texas created a "Travelling Board," whose duty it was to inspect the records of all the Boards of Land Commissioners, "and ascertain by satisfactory testimony what certificates for lands had been issued by the respective boards to legal claimants, and report as soon thereafter as practicable to the Commissioner of the General Land Office such certificates as they find to be genuine, setting forth in their reports the number and date of the certificates, the quantity of the land, and the name of the person to whom it was issued." 1 Sayles' Early Laws of Texas, 385. In June, 1841, this Board made its report to the General Land Office, and described the head-right certificate here involved, as follows: "Second class certificate, No. 701, issued November 1, 1838, for one-third of a league of land to J. H. Chisholm." On the 27th of October, 1852, the following document was recorded in Harris County, Texas — W. R. Baker being at that time the clerk of said county:

"Know all men by these presents, that I, J. H. Chisholm, for the sum of $150 to me paid by E. M. Robinson, do hereby sell, transfer, and convey to the said Robinson, his heirs and assigns forever, my head-right for one-third of a league of land, No. ——, dated November, 1838, issued by the Board of Land Commissioners for Harrisburg County, together with the land upon which the same may be located, to have and to hold the same to him, the said Robinson, his heirs and assigns forever, and I agree to warrant and defend the said claim against all claims whatsoever.

"Witness my hand and seal, at Houston, December 2, 1838.

"J. H. CHISHOLM.

"Witnesses: GEORGE W. LIVELY.

"J. H. SOUTHMAYD.

"REPUBLIC OF TEXAS,   }
"COUNTY OF HARRISBURG. }

"Before me, Andrew Briscoe, Chief Justice of Harrisburg County, came J. H. Chisholm, the grantor above, and acknowledged to me that he signed and executed the foregoing deed for the uses and purposes therein contained; to certify which I have hereunto set my hand and seal of the county, at Houston, December 2, 1838."

On January 2, 1858, J. M. Steiner deposited in the General Land Office of Texas the certificate No. 990, for one-third of a league of land, issued, as above stated, to J. H. Chism, and lands were taken up thereunder in Hill County, Texas, and patent was issued therefor. On the 25th of July, 1888, a copy of the paper which had been recorded in the county of Harrisburg was placed on record in Hill County.

The plaintiffs, as heirs of J. H. Chism, claimed the land covered by the patent issued under this head-right certificate. Their case substantially depended upon testimony tending to show that, after serving in the army of Texas, Chism returned to Kentucky, and stated that he was entitled to certain lands in Texas, and had with him papers so showing; that he subsequently went again to Texas for the purpose of looking after his land claims, and returned to Kentucky about November, 1838; that on his second return he also stated that he had land in Texas, and had sold some; and that he then had papers indicating his ownership of land in that State. The testimony of his sisters and others tended to identify one of the papers which he had with him on this last occasion with the land certificate No. 990. There was testimony to the effect that he was a good penman, that he signed his name J. H. or J. Harvey Chism, and his name appeared as such on the army rolls and other official documents of the Republic of Texas. He died in 1839. After his death, in 1850 or 1851, his father placed the papers relating to the claim of the son for Texas lands in the hands of Augustin Moreman, and gave him a power of attorney, in order that he might visit Texas and perfect the claim. Moreman, with the papers in his possession,

proceeded to Texas for the purpose of executing his agency. On arriving there, he went to the land office and exhibited the papers. The officers of the land office pronounced the claim valid and in all respects regular, but declined to act upon it because there was a defect in the power of attorney, it having been acknowledged by a Kentucky official and not by a commissioner of the State of Texas. In consequence of this fact, Moreman was unable to obtain the patent for the land, and left the papers with a Mr. Fergerson, in Austin, Texas, and returned to Kentucky. Before a new power of attorney could be executed the father of Chism died, and Moreman's arrangements with him were thus terminated. Subsequently, on the request of the mother of Chism, Moreman wrote to Fergerson for the papers, and they were returned in an envelope. Moreman handed over this envelope as he received it at the post office, without examination, to Mrs. Chism. There was also testimony tending to show that after this date the heirs of Chism sent the papers thus received (which are not very accurately identified) to Texas for the purpose of obtaining the land, and that the papers thus sent, whatever they were, were burned by accident.

The deposition of Moreman was taken; annexed to it was a certified copy of the original certificate No. 990, issued to J. H. Chism. This was shown to him, and he was asked whether the original, of which it was a copy, was among the papers which were turned over to him in 1850 or 1851 by the father of J. H. Chism, and in connection with which his power of attorney was given. Mr. Moreman answered: "I have examined the above copy, and should say that the original of which it is a copy was among the papers turned over to me by the father of J. H. Chism. The language seems familiar, and I recognize some of the terms, as having an honorable discharge, and being a single man. The original paper was folded twice, and the folds were somewhat frayed with handling, looking like an old paper; the writing was remarkably effeminate. I cannot say definitely whether the original paper was returned to the father or mother of J. H. Chism or not; the last time I ever saw them was in Austin, Texas, in 1850

or 1851, in the month of May." The witness then proceeded to state the facts connected with his employment, his journey to Texas, his going to the land office, and his failure because of the defect in his power of attorney.

The defendant's case was supported by the testimony of Baker, who said that he bought the certificate as the agent of one Robinson, and that at the time the transfer was drawn the certificate was delivered to him by the seller. Describing the seller, he said: "He represented that he had been serving in the Army, and I have an indistinct memory that I called his attention to a discrepancy or difference in the spelling of the name, and that the explanation was that some people spelled it as it was pronounced, according to the sound." He then testified that the original transfer was lost, and that the witnesses whose names purported to be affixed to it and the officer before whom it purported to have been acknowledged were dead; and that Robinson, the principal for whom he claimed to have acted in buying the certificate, lived in the State of New York, and was known to nobody in Texas, except himself and family. His testimony in regard to Robinson was indefinite. He said that the man was alive some few years before and was in New York, but gave no address by which he might be found. He further testified that he had sold this certificate, along with others, as the agent of Robinson, to J. De Cordova, and that De Cordova had resold it to him. That, as the owner of this certificate, he had employed a man by the name of Steiner to apply for and enter land thereunder.

*Mr. E. H. Graham* for plaintiff in error.

*Mr. Morgan H. Beach* (with whom was *Mr. T. W. Gregory* on the brief), for defendant in error.

No appearance for warrantor.

Mr. Justice White, after stating the case, delivered the opinion of the court.

The assignments of error are addressed, first, to the alleged illegal admission of evidence ; secondly, to the refusal of the court to give certain charges; and, thirdly, to the charges actually given.

1st. The defendant objected to the introduction of the deed of sale made by J. H. Chism on October 31, 1838, of his bounty certificate, because it was *res inter alios* and irrelevant. The objection was untenable. The issue of forgery *vel non* of the deed from which the title in controversy was deraigned clearly made the proof relevant. The evidence tended to show the manner in which J. H. Chism signed his name at or about the time it was contended that the transfer signed by J. H. Chisholm had been executed. It was also admissible as tending to show how J. H. Chism then valued Texas land, and thus to disprove the claim that he had sold a certificate entitling him to 1400 acres at $150 at just about the same time he had obtained $500 for a certificate for a less quantity. Irrespective of this, testimony had been elicited without objection to the effect that J. H. Chism had declared, on his second return to Kentucky, that he had sold land in Texas, and this deed was competent to explain that statement. It is a matter of no moment whether testimony as to these declarations of J. H. Chism was admissible or not, since it was admitted without objection, and it was competent to offer evidence to throw light upon and explain them.

2d. The objection taken to the statement of the witness Moreman, that " he should say " that the original, of which the certificate produced was a copy, was among the papers turned over to him by the father of J. H. Chism, went, obviously, to the effect and not to the admissibility of that statement. Besides, the objection separates the words " I should say " from the whole context of the witness' testimony ; whereas the context makes it clear that those words, instead of being the expression of a conjecture, were simply a form of speech, for, after using them, the witness proceeded to furnish the basis for his statement by describing the original document in such a way as to give emphasis to his identification of the copy.

3d. The court refused to instruct the jury, at defendant's request, as follows: "The uncontroverted evidence in this cause shows that the certificate by virtue of which the land in controversy was located came into the hands of W. R. Baker, as agent of E. M. Robinson, as a purchaser, in December, 1838, and that it was thereafter located on the land by Steiner as the agent of Baker, who had acquired the title of Robinson in the same, and if the person who sold the same to Robinson through Baker, under whatever name, was, at the time of the sale to Baker, the owner of the certificate, you will find a verdict for defendant; and in this connection you are instructed that it is a presumption of fact that a person in possession of a certificate is the owner in the absence of evidence to the contrary, whether he have a written assignment or not, and it is shown by the evidence that the certificate in question was in possession of a person who sold it to him for Robinson recently after it was issued, it having been issued in November, 1838; if you should believe such person was not the same to whom it was issued, yet, unless the evidence shows that the person to whom it issued had not sold it, you would be authorized to find for the defendant."

This charge was rightly refused. It practically requested the court to disregard the proof, and amounted to a request to instruct a verdict for the defendant. The very issue in the case was whether the certificate did or did not come into the hands of Baker, as agent, in 1838. The reliance of the defendant was on the testimony of Baker, and the fact that the name J. H. Chisholm and the name J. H. Chism were *idem sonans*. But Baker's testimony was directly contradicted by that of Moreman, and it is impossible to reconcile the two. If the certificate was in Moreman's hands as testified to by him, it could not have been in the hands of Baker, in 1838, as sworn to by him. There were, besides Moreman's testimony, many circumstances tending to refute Baker's statements. These were the fact that the transfer from Robinson was not put on record until 1852, when Baker was clerk, and therefore himself made the record; the loss of the original; the fact that the transfer was made in the name of Robinson, whose exist-

ence and whereabouts were so meagrely disclosed as to render it impossible from the testimony to discover him; that, although the first transfer in 1838 purported to have been made in the name of Baker as agent, there was a subsequent transfer by Baker to De Cordova, and yet, a third transfer from De Cordova back to Baker; that the patent for the land was not obtained until 1858, many years after Baker claimed that he was in possession of the certificate; and, finally, that the transfer itself, when examined by the light of surrounding facts, affords some ground for the claim that Baker could not have had the certificate in his possession in 1838, when the transfer was made.

The certificate contained six statements: First, its class; second, the quantity of the land for which it issued; third, its number; fourth, the date of its issue; fifth, the name of the person to whom it was issued; sixth, the county from which it was issued. The transfer, in describing the certificate, states it as having been issued to J. H. Chism; makes no mention of day or number. It says, "No. ——," and that the certificate was "dated November, 1838," giving no day of the month, and it is signed "J. H. Chisholm." The failure in the transfer to give either the number of the certificate or the day of the month on which it was issued, as also the mention of the name of J. H. Chism in its body, coupled with the signature "J. H. Chisholm," were in themselves claimed to be, as they undoubtedly were, circumstances tending to show that the party who wrote the transfer could not have been in possession of the certificate.

It was contended that this inference was further strengthened by the public records. Thus, the return to the General Land Office by the county clerk gave the number 990, corresponding with that of the certificate itself, and gave the month as November, 1838, without giving any day of the month. The report of the Travelling Board described the certificate by a wrong number, 701, instead of 990; it gave the date thereof as November 1, 1838, and the name of the grantee as J. H. Chisholm. The fact is that the transfer seemed to have been drawn with reference to these public records, and, in order not

to conflict with either of them, it uses the name J. H. Chism
in the body and the name J. H. Chisholm in the signature,
and it omits the number of the certificate altogether, and
mentions no day of the month, the day being also omitted in
one of the records. Under this condition of the proof, the
court was obviously correct in not taking the question of fact
from the consideration of the jury.

4th. The court refused to charge as follows at the request of
the defendant:

"The certificate was issued to a person whose name was
spelled therein Chism. The transfer in evidence shows that
the person who transferred the same spelled his name Chis-
holm. Now, if the person who so transferred the certificate
was the same to whom it issued, it is not material in what
form he signed it, you will find for the defendant; and in
determining whether he was the same person you may con-
sider the fact, if a fact, that the person who sold to Baker
was a soldier, the date of his certificate, the whereabouts of
J. H. Chism about the time, and the evidence introduced by
plaintiffs that J. H. Chism was in Texas about the time of the
transfer."

This charge was also correctly refused. In some particulars
it assumed the existence of facts not proven by asking the
court to state to the jury that Chism was in Texas about
the time of the transfer, December 2, 1838, whilst there was
evidence that he returned to Kentucky in November, 1838.
Besides, we think the charge of the court, as actually given to
the jury, furnished all that the defendant was entitled to on
this point. It was as follows:

"The defendants have offered what purports to be a trans-
fer of the certificate granted J. H. Chism to one E. M. Robin-
son, which transfer is signed J. H. Chisholm, and in order for
this transfer to convey title to said certificate the proof must
satisfy you that the person who made said transfer was the
same man to whom said certificate was issued, and unless it
does so satisfy you the defendant cannot defeat the plaintiffs'
recovery of two-thirds of the land sued for; and on this issue
as to the person who made the transfer being the same person

to whom said certificate No. 990 issued the burden of proof is on the defendant; and if the proof does not so satisfy you, the plaintiffs are entitled to recover the whole land unless defeated by the defendant's plea of five-year limitation, as to Mrs. Van Horn's one-third interest therein."

5th. The court refused to give, at defendant's request, the following charge:

"It is shown by the evidence that the certificate has been in the land office since 1857, and is now there, and if the certificate or paper about which plaintiffs testify was burned in Dallas or elsewhere, then the paper testified about by them is not this certificate."

This charge was also correctly refused. It asked the court to instruct upon a purely hypothetical statement of fact and was calculated to confuse, and was, moreover, fully covered by the charges actually given.

6th. The court refused to give the following requested charge:

"The transfer introduced by the defendant to the certificate is not a forgery in law, whether signed by the person who was the owner of said certificate acquired from the person to whom it issued or by the person to whom it issued, and you are instructed that if in this case you should find for the plaintiffs, in any event you will find for the defendant one-third of the land as against M. S. Van Horn, and for the other plaintiffs only two-thirds of the land."

This charge was correctly refused. There was no evidence tending to show that the transfer was made by any person claiming to have acquired the certificate from Chism; on the contrary, the testimony of Baker and all the testimony in the case on both sides presented the issue of whether Chism, the person to whom the certificate had been issued, signed the transfer. There was no proof in any way to indicate that Chism had transferred to some one else his certificate, and that this other person had signed J. H. Chisholm in the alleged transfer to Baker. That portion of the charge which asked that the jury be instructed that if the transfer was signed by Chism, to whom the certificate issued, it was not a forgery, was fully covered by the charge given.

7th. The court gave the following charge, and exception was taken thereto:

"If you believe from the evidence that W. R. Baker falsely made or caused or procured to be made falsely, or in any way aided, assisted, advised, or encouraged the false making of the transfer to E. M. Robinson, signed J. H. Chisholm, and purporting to convey the land certificate 990, issued to J. H. Chism, with intent to make valuable thing or money thereby, or with intent to set up a claim or title or to aid or assist any one else in setting up a claim or title to the land in controversy, or in any way to injure, obtain the advantage of, or prejudice the rights or interest of the true owner of the land, then the said transfer is a forgery, and you will find for plaintiffs for the land in controversy."

It is claimed that this charge was erroneous, because it submitted issues not raised by the evidence, and was calculated to impress the jury with the belief that there was some proof of such action on the part of Baker, and thus prejudice the defendant's case. But this objection takes it for granted that there was nothing in the testimony indicating that Baker made the false endorsement, if one was made. We have already stated the tendency of the testimony on both sides, and that the very nature of the direct, as well as the circumstantial, evidence necessarily raised the question of forgery *vel non*, and of Baker's connection with the forgery, if there was any. Nor is this charge amenable to the criticism that it assumes the fact that the transfer was false. It is true that the court used the words "in any way aided, assisted, advised, or encouraged the false making of the transfer to E. M. Robinson, signed J. H. Chisholm." But it is manifest from the connection in which these words were used, and from the entire charge given, that the court left to the jury the question of whether the transfer was forged or not, without expressing any opinion thereon. Indeed, it was expressly charged that on the issue of the forgery the burden of proof was on the plaintiffs.

8th. The following charge was also objected to:

"If you believe from the evidence that a man of the name of J. H. Chisholm or of any other name who was not the iden-

tical party to whom the certificate No. 990, issued to J. H. Chism, did falsely make the transfer to E. M. Robinson, signed J. H. Chisholm, with the intent to make money, or other valuable thing thereby, or with intent to set up a claim or title, or aid or assist any one else in setting up a claim or title to the land in controversy, or in any way to injure, obtain the advantage of, or prejudice the rights or interest of the true owners of the land, or with any fraudulent intent whatever, then said instrument you will find to be a forgery, and you will bring a verdict for plaintiffs for the land in controversy. If you believe from the evidence that J. H. Chisholm or any other person not being the identical person to whom certificate No. 990, in the name of J. H. Chism issued, did falsely counterfeit the original grantee in making the transfer to E. M. Robinson, signed J. H. Chisholm, with the intent to make money or other valuable thing thereby, or with the intent to set up a claim or title, or aid or assist any one else in setting up a claim or title, to the land in controversy, or to cast a cloud upon the title, or in any way injure, obtain the advantage of, or prejudice the rights of the true owner of the land, or with any fraudulent intent whatever, then you will find said instrument a forgery, and will find for plaintiffs for the land in controversy."

This charge, it is said, is erroneous, (*a*) because it presents an issue not raised by the evidence; and (*b*) because it excludes the hypothesis that a person to whom J. H. Chism may have transferred the certificate by delivery was the person who signed the transfer " J. H. Chisholm; " and (*c*) because if such person signed his own name " J. H. Chisholm," his signature was not a forgery under the law then existing in Texas.

There was, as we have already said, no evidence tending to show a transfer by J. H. Chism, the grantee, to another person, and an assignment by such person to Baker. The entire proof on both sides was addressed to the question of whether the certificate was in the possession of Chism at the time that Baker claimed that it was delivered to him, and so remained thereafter. The whole case turned upon this question, and the issue of whether the transfer was a forgery or not in a large

measure depended on the conclusions formed by the jury as to this fact. But the claim that if the name of J. H. Chisholm was signed by one bearing that name, the writing of this signature could not under any circumstances constitute a forgery, is unsound. It is asserted by the plaintiff in error that the law of Texas as to forgery prior to 1876 was as follows:

"He is guilty of forgery who, without lawful authority, and with intent to injure and defraud, shall make a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would (if the same be true) have created, increased, diminished, discharged, or defeated any pecuniary obligation, or would have transferred or in any manner have affected any property whatever." Art. 2093, Paschal's Digest of Laws.

Clearly, if one whose name was J. H. Chisholm took a certificate issued to J. H. Chism, and, falsely personating J. H. Chism, signed his name as J. H. Chisholm, intending thereby to counterfeit the signature of J. H. Chism, and, by reason of the fact that the names were *idem sonans*, to produce the impression that the name signed was that of J. H. Chism, this act would have been a forgery under this statute. The case of *Commonwealth* v. *Baldwin*, 11 Gray, 197, cited to the contrary, sustains this view.

9th. The ninth assignment is covered by what we have already said.

10th. The court gave the following charge, which was objected to:

"The defendants have offered what purports to be a transfer of the certificate granted J. H. Chism to one E. M. Robinson, which transfer is signed 'J. H. Chisholm,' and in order for this tranfer to convey title to said certificate the proof must satisfy you that the person who made said transfer was the same man to whom said certificate was issued, and unless it does so satisfy you the defendant cannot defeat the plaintiffs' recovery of two-thirds of the lands sued for; and on this issue, as to the person who made the said transfer being the same person to whom said certificate No. 990 issued, the burden of proof is on the defendant; and if the proof does not so

satisfy you the plaintiffs are entitled to recover the whole land unless defeated by the defendant's plea of five years' statutes of limitation as to Mrs. Van Horn's one-third interest therein."

It is contended that the word "satisfy" exacted a greater degree of proof than the law required, and we are referred to cases in Texas which, it is claimed, hold that an instruction unless the party on whom the burden of proof rests establishes his case by "satisfactory evidence," the jury must find for the other side, exacts from the first party an undue degree of proof. Whatever, abstractly speaking, may be the merits of this objection, it is unavailable here. The charge objected to was only one of a number, and, we think, taking all the instructions together, they fairly stated to the jury that their conclusions were to depend on their belief as to the preponderance of proof.

11th. This assignment of error is addressed to the charge of the court in regard to the controversy between White and his warrantors. This charge is thus set out in the record:

"The court instructed the jury that if they found for the plaintiff for the whole of the land in controversy, they would find for the defendant White, against the executors of Baker, the sum of $3960, with 8 per cent interest from October 2, 1887 (it being in evidence that that was the amount of the purchase money paid by White to Baker, and this suit having been filed on the 2d day of October, 1889); and the court also instructed the jury to find for the defendant White the value of his improvements made in good faith, and that if the amount exceeded the value of use and occupation of the premises from the 2d day of October, 1887, they would find the value of the use and occupation from the time said White took possession, not to exceed the value of the improvements, and deduct it from the value of the improvements."

It is contended that to allow the defendant interest only from October 2, 1887, instead of from the date of the sale, in 1882, was erroneous. The Texas statute limits the right to recover, in an ejectment suit, for use and occupation, to a period of two years prior to the commencement of the suit. 2 Sayles' Tex. Civ. St. art. 4809.

The court evidently had this statute in view, and considered that as the plaintiffs' right to recover for use and occupation was restricted to two years, the defendant's claim against the warrantor for interest should be confined to the same period, upon the theory that as long as the possessor enjoyed the fruits, he was not entitled to recover interest on the price. This view, however, overlooked another provision of law, which allows the plaintiff in ejectment to recover for use and occupation for a longer period than two years, prior to the bringing of the action, where the defendant in ejectment sets up a claim for improvements. In such a case the law allows a claim for use and occupation beyond the period of two years, and to the extent necessary to offset the claim for improvement. 2 Sayles' Tex. Civ. St. arts. 4810, 4815. Here the defendant made a claim for improvements, and the claim for use and occupation was allowed beyond two years, and to the extent necessary to offset the improvements. As the claim for use and occupation did not equal the claim for improvements, the former must necessarily have extended to the full period of defendant's occupancy. To limit the defendant's recovery of interest against the warrantor to the period of two years was, therefore, to deprive him of interest on the price from the day of the sale, although he was held accountable for use and occupation from that date. He ought, therefore, to have been allowed interest against the estate of Baker from the day of the sale.

Error in this regard, however, in no way concerns the controversies between the plaintiffs and the defendant. The judgment will therefore be

*Affirmed except in regard to the issues between the defendant and the executors of Baker, defendants in the call in warranty; in this particular, the case is remanded with directions to grant, on application of defendant, a new trial; in all other respects the judgment is affirmed.*