## BERKOVITZ v. UNITED STATES.
### No. 14493.

United States Court of Appeals
Fifth Circuit.
May 31, 1954.

Walter G. Arnold, Jacksonville, Fla., Claude Pepper, Neal Rutledge, Philip T. Weinstein, Pepper & Faircloth, Miami, Fla., for appellant.

Mark Hulsey, Jr., Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., H. Brian, Holland, Asst. Atty. Gen., Ellis N. Slack, David L. Luce, Joseph M. Howard, Sp. Assts. to Atty. Gen., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellant was convicted and sentenced on a charge of "attempting to defeat and evade income taxes" for the year 1946, under Section 145(b), Title 26 United States Code, of the Internal Revenue Code.

Defendant's assignments of error are in substance as follows:

1. That the court erred in charging: "The presumption is that a person intends the natural consequences of his conscious acts, and a natural presumption would be if a person consciously, knowingly, or intentionally did not set up his income, and thereby the Government

was cheated or defrauded of taxes, that he intended to defeat the tax.";

2. In refusing to give appellant's charges Nos. 8, 14 and 16, "or any one of them";

3. (1) In excluding evidence of the subsequent payment of the taxes or a considerable part thereof, and (2) then charging the jury that it could consider whether defendant had discharged his tax liability in determining his criminal intent;

4. "Is proof that the defendant failed to include certain items of income in his income tax return sufficient—standing alone—to sustain a verdict of guilty of the felony defined in Sec. 145(b) of the Internal Revenue Code?";

5. In further charging: "It is for you to determine from all of the evidence whether the defendant has knowledge of the falsity of this return, provided you also find that the return was false."; and

6. The court abused its discretion (1) in denying appellant's motion for a bill of particulars, and (2) in overruling his motion for a new trial, based upon alleged newly discovered evidence, which could only have been ascertained had the motion for particulars been granted.

The two principal alleged errors which we shall first consider are No. 1, dealing with the charge first quoted above, and No. 3, the excluding of evidence by defendant to show he had paid a substantial part of the taxes he was charged with attempting to evade and defeat, and later charging the jury they might consider the failure to pay as bearing upon his intent.

It was conceded by defendant that he had not reported all of his income for the calendar year 1946, and the sole issue was as to whether this had been done wilfully and intentionally, with knowledge of the relevant facts, for the purpose of defeating and evading the taxes, as denounced by the criminal provisions of the income tax law under which the indictment was laid. The government, of course, offered defendant's income tax return bearing his signature, which was

also not denied, and followed this up with evidence to support the charge in the indictment that accused had returned only $5,098.68 as income upon which a tax of $822.38 had been paid; whereas, his true income had been $101,361.34, on which he owed the sum of $63,458.06 as taxes.

It is believed to be more logical to consider these alleged errors in reverse order, that is, the exclusion of evidence as to what had been paid, and then giving the charge hereafter quoted.

In his opening statement, counsel for the government told the jury:

"That the defendant was a large citrus fruit grower; had groves in counties, in several counties, Polk County and others around there; and he sold his fruit and received many thousands of dollars for his fruit that he did not account for.

"We will put in the cancelled checks that they paid him. The originals, or photostatic copies. And it will amount when we get through—it is not like one of these net worth cases; it is just a matter of addition and subtraction."

The first witness called by the prosecution was one Jack R. Davis, who testified he was the "Assistant Head of the Accounting Branch in the office of the Director of Internal Revenue * * *" but did not know defendant personally. The witness had produced in response to subpoena *duces tecum* "the original * * * income tax return" of defendant, to which were attached "certain schedules" which were offered and received in evidence as Government's Exhibit No. 1, without objection. Thereupon counsel for the Government stated in the presence of the jury:

"May it please the Court and Gentlemen of the Jury: This income tax return, the indictment is based on that, and you will have it to look at later on, and it shows the filing, and with respect to the question asked by defense counsel as to the wife of the defendant, the

answers to this question is a question that is asked, 'Is your wife making a separate return for 1946?' and the answer is 'No'. So this is the separate return of Philip Berkovitz, as far as the facts appearing now are concerned."

On cross examination, the witness stated that the return showed on its face that it had been made by a "Certified Public Accountant". This was later verified by the accountant, Frank L. Cowles, who stated that the return had been prepared in his office (as a Public Accountant) in Tampa, Florida, under Cowles' supervision, entirely from data furnished by defendant's bookkeeper. However, in response to questions by Government's counsel, he further stated that he had not examined any books of Berkovitz.[1]

The prosecution then introduced testimony of Walter G. Howard, the bookkeeper who had kept defendant's books for the period involved, to show where he had gotten the data for entry in the books. Howard was asked by the court:

"Q. Are you a bookkeeper? A. Supposedly, yes, sir.

"The Court: And you kept books for Mr. Berkovitz during the period in question, 1946? A. Part of the time, yes, sir."

The witness was presented by Government's counsel with a document he had produced at their instance and identified it as a "record of checks recorded by Mr. Berkovitz and given to me, which was transferred to the journal sheets on the books."

"By Mr. Hill (counsel for defendant): Q. Mr. Howard, are these figures in your handwriting? A. Yes, sir.

"Q. This isn't on the books you kept for Mr. Berkovitz? A. No.

"Mr. Hill: Are you through with the witness?

"The Court: He has offered the document in evidence, as I understand, and you are permitted to cross examine for the purpose of objection.

"Mr. Hill: I understand.

"By Mr. Hill: Q. And these figures are in your handwriting? A. Yes, sir.

"Q. But these are not the only books you kept? A. No, these were taken from the journal or ledger, as I remember—I don't recall definitely which.

"Q. You don't remember whether it was taken from the journal or the ledger? A. I don't recall definitely, no, sir. Those checks were recorded in the journal sheets and posted in the ledger.

"Mr. Hill: Your Honor, I don't see the relevancy of these figures, these are not his books, that's just something he copied from books.

"The Court: When did you make this list, Mr. Howard? A. I don't remember—is it dated at the top?"

[1] "By Mr. Phillips: Q. As I understand it, you did not check against the records of Mr. Berkovitz that he kept of his business to see whether or not he had given you all the information he had about his income? A. Not as I recall, Mr. Phillips. Of course, I didn't make this return myself, and I am not sure just what was done. Records may have been furnished to us, but I don't think they were, because the information that was furnished was sufficient, as it was apparently taken from the records. And I doubt if other records were furnished, but that's mostly recollection, because one of my men made the return.
"Q. Was it furnished you in writing? A. Yes, sir.
"Q. And you have that writing with you? A. Yes, sir, it's in the form of trial balances and figures.
"Q. Now, please state to the jury what, according to the income tax return and the other data you have, how much that the income tax you found was due by Phillip Berkovitz for the year 1946, received for citrus fruit for the year 1946, what the total amount he received is? A. $203,398.05." (R. 20-21.)

The Court then took over and examined the witness, objection was made to the document by counsel for the defendant and the Court stated, "I am going to mark this paper No. 2 for identification for the Government, and it may be connected up later on."

When the witness was finally taken on cross examination by counsel for the defendant, he testified as indicated in footnote.[2]

Further on in his testimony on cross examination, he admitted that the document from which he was testifying was made up after he left defendant's employ. Counsel for defendant then had him identify another paper and when it was attempted to interrogate the witness about it, the court intervened, ruling that, although the witness admitted it was in his handwriting and dealt with the same subject matter, the court said, "This isn't anything in cross. You don't need to answer that."

"By Mr. Hill: Q. Mr. Howard, when you made up the figures on that piece of paper that I showed you, were they made about December 27th, as noted on that paper? The Court: This isn't anything in cross. You don't need to answer that. You will have to call this man as your witness to bring out what he did about that statement."

Other witnesses were introduced to prove purchases of fruit from defendant and to show deposits of funds in banks, et cetera, the purpose being to establish the quantity and value of sales as bearing upon defendant's income.

Thereafter a Special Agent of the Bureau of Internal Revenue was called by the Government to testify generally about his investigation, talks with defendant, sources of information, et cetera. He stated that the tax actually due for the calendar year 1946 was, as charged in the indictment, $63,458.06 (R. 247). Counsel for defendant then questioned him about how much taxes the defendant had actually paid and after considerable exchanges between them, the witness insisting he had not actually collected any money, counsel for defendant asked:

"Q. You are thoroughly familiar with the fact, though, aren't you?" Thereupon the Court intervened:

"The Court: Listen, please don't argue with this witness. Just ask him about factual matters. He hasn't testified Mr. Hollingsworth came to Winter Haven and did anything. You can't assume something that he hasn't already testified to. Now if you want to make a showing, you can make it by a witness that says he knows something about it.

"Mr. Hill: I thought this man knew something about it. I am sorry.

"The Court: Well, you have asked him a great deal that he hasn't testified to, which is unfair to the witness. All right, proceed with the examination."

Thereafter counsel questioned the witness at length on the matter of where he got his information to determine the amount of taxes due.

The immediately foregoing discussion and quotations are for the purpose of

---

**2.** "By Mr. Hill: Q. And full-time after that, is that correct? A. After September—let's see—September 28th. About September 21st, it seems from these checks.

"Q. You kept his books as they related to his fruit business, grove business; isn't that correct? A. To the best information obtainable; yes, sir.

"Q. Yes, sir. Now you did that for the full year 1946—may I have those? A. For the full year 1946?

"Q. Yes. He didn't have any other bookkeeper keeping his books as regards his fruit business in 1946, did he? A. None that I know of.

"Q. Well, you would have known it if he did have, wouldn't you?

"The Court: That calls for a conclusion.

"Mr. Hill: Sir?

"The Court: He has answered the question. He said no other bookkeeper that he knew of." (R. 29–30.)

disclosing the rather restricted manner in which counsel for defendant was permitted to deal with Government witnesses, as a sort of background for disposing of the ruling complained of in alleged error No. 3 with its possible effects upon the jury.

As his own and last witness, defendant was asked about how much he had paid as income taxes for 1946.

"Q. Philip (Berkovitz), in round figures, how much income tax have you paid for the calendar year 1946?

"Mr. Hulsey: Your Honor, I am objecting to that question on the ground that this is not a suit for income tax, this is a criminal case, and civil income tax liability does not enter into the case here.

"Mr. Hill: Well, Your Honor, it enters into that indictment.

"The Court: I think he can ask him what he paid with the return; what he has paid since that date he cannot; what he has paid since that date it seems to me is immaterial."

Defendant's counsel then attempted to introduce the Revenue Agent's report for 1948 for comparison, in view of the inefficient and incompetent work of Howard as bookkeeper, as defendant contended, with the year 1946. Similar objection was made by counsel for the Government, and defendant's attorney explained the purpose as stated below:

"Mr. Hill: Well, it is a Revenue Agent's Report for the year 1948, and I don't mind, if I may say so, my purpose is to show by comparison his income from these groves in 1948 with the alleged income of 1946.

"The Court: I will mark them for identification, Mr. Hill, but I will exclude it from evidence. 'H' for identification. It seems to me to have no bearing whatever on this, yet.

"Mr. Hill: Well, you understand my purpose in wanting it in evidence, I believe. There is no need to—I don't suppose you would want

to hear from me on that subject at all?

"The Court: No, I have already ruled."

However, in the general charge, the Court instructed the jury:

"There is a distinction between the civil liability of a defendant and his criminal liability. This is a criminal case. The defendant is charged under the law with the commission of a crime, and the fact that he has or has not settled the civil liability for the payment of taxes claimed to be due to the United States is not to be considered by you in determining the issues in this case, *except as it may throw some light on the intent of the defendant.*" (Emphasis by the writer.)

█ It is contended, of course, that since the Government's witness, Special Examiner Thornton, had testified that defendant actually owed $63,458.06 instead of the $822.38 shown and paid when the return was filed, this instruction in the general charge was highly prejudicial not only because of its bearing upon the matter of good faith of accused initially, but because the sole effect was to tell the jury in so many words that they could consider the failure to pay the tax actually due as throwing "light on the intent of the defendant". We agree with counsel of the defendant that this was reversible error in view of the exclusion of defendant's testimony as well as other evidence to establish he had since paid the tax. Barshop v. United States, 5 Cir., 1951, 192 F.2d 699, certiorari denied 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688; Heindel v. United States, 6 Cir., 1945, 150 F.2d 493; United States v. Matot, 2 Cir., 1944, 146 F.2d 197, 198; United States v. Wicoff, 7 Cir., 1951, 187 F.2d 886, 890–891; White v. Van Horn, 159 U.S. 3, 11, 15 S.Ct. 1027, 40 L.Ed. 55, 58; Loews, Inc. v. Cole, 9 Cir., 1950, 185 F.2d 641, 661–662; Baer Bros. Land & Cattle Co. v. Palmer, 10 Cir., 1946, 158 F.2d 278, 280; Hill v. Hill, 55 Ga.App. 500, 190 S.E. 411;

Jaeger v. Hackert, 241 Iowa, 379, 41 N. W.2d 42.

### Alleged Error No. 1.

As stated earlier, there was no denial that a substantial part of appellant's income had not been returned, and his innocence or guilt depended upon what the jury believed about his honesty in signing the return prepared by the Certified Public Accountant Cowles. It is therefore necessary to examine the charge complained of along with the matters dealt with in connection with alleged error No. 3 above, to see whether it was made clear as to where the burden rested to prove bad faith.

Before using the language complained of in Specification of Error No. 1, the Court had stated in its general charge as indicated in footnote.[3] Then followed the language complained of and quoted with respect to this specification of error.

With respect to the first question stated in the beginning of the quoted charge, the Court told the jury elsewhere, "There is no serious dispute but that a return for the calendar year 1946 was filed by Mr. Berkovitz with the Collector and that it is here in evidence as Government Exhibit No. 1". It had, of course, told the jury in other parts of the charge that the defendant was presumed to be innocent until proved guilty beyond a reasonable doubt with full elucidation of what this meant. However, the error was in telling them that as a matter of law they could presume criminal intent from the circumstances described in the questioned charge, without at the same time telling them they must consider all the evidence including that offered by defendant to disprove that intent, that the burden of proof never shifted and the Government, in spite of those circumstances, was required to prove the guilt of defendant beyond a reasonable doubt. This, of course, included defendant's own testimony and all other evidence offered by him to establish good faith and his contention that he had signed the return because of ignorance of the state of his business, depending upon Howard, the bookkeeper, to report his income properly. In this instance the Court was dealing with a single piece of documentary evidence, the return, and the jury could have considered it as conclusive of the intent to defraud.

In Morissette v. United States, 342 U.S. 246, 274–275, 72 S.Ct. 240, 255, 96 L.Ed. 288, the Supreme Court said:

> "*Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury.* State court authorities cited to the effect that intent is relevant in larcenous from an accidental act, and also employed to characterize the thing done without grounds for believing it lawful or conduct marked by careless disregard of whether one has the right so to act, but, when used in a criminal statute, gentlemen, generally means an act done with bad purpose, without justifiable excuse, stubbornly, obstinately, or perversely.
>
>    \*    \*    \*    \*    \*
>
> "The attempt to defeat and evade the tax must be a wilfull attempt, that is to say, it must be made with the intent to keep from the government a tax imposed by the income tax laws which it was the duty of the defendant to pay to the government. The attempt must be wilfull, that is, intentionally done with the intent that the government should be defrauded of the income tax due from the defendant." (R. 593–595.)

3. "The questions that you must determine narrow themselves more or less down to two. First, did he file or cause to be filed, that is the defendant, Mr. Berkovitz, did he file or cause to be filed a false and fraudulent return for the reason that it understated his income substantially, and hence understated the tax owed substantially. That is the first thing you must determine. The second thing is, if you find that to be so, did he do this wilfully and knowingly and in an attempt to defeat and evade the tax due the United States for the calendar year in question. Those are the matters that are in controversy here, those are the matters that you must take all this evidence and study it, weigh it, and determine from your examination of the evidence.

"Now the word 'wilfully' in the sense used here, denotes often, intentional, knowing, or voluntary, as distinguished

crimes are equally emphatic and uniform that it is a jury issue. The settled practice and its reason are well stated by Judge Andrews in People v. Flack, 125 N.Y. 324, 334, 26 N.E. 267, 270: 'It is alike the general rule of law, and the dictate of natural justice, that to constitute guilt there must be not only a wrongful act, but a criminal intention. Under our system (unless in exceptional cases), both must be found by the jury to justify a conviction for crime. However clear the proof may be, or however incontrovertible may seem to the judge to be the inference of a criminal intention, *the question of intent can never be ruled as a question of law, but must always be submitted to the jury.* Jurors may be perverse, the ends of justice may be defeated by unrighteous verdicts; but so long as the functions of the judge and jury are distinct, the one responding to the law, the other to the facts, neither can invade the province of the other without destroying the significance of trial by court and jury. * * *'

"*It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act.* It often is tempting to cast in terms of a 'presumption' a conclusion which a court thinks probable from given facts. The Supreme Court of Florida, for example, in a larceny case, from selected circumstances which are present in this case, has declared a presumption of exactly opposite effect from the one announced by the trial court here: ' * * * *But where the taking is open and there is no subsequent attempt to conceal the property, and no denial, but an avowal, of the taking, a strong presumption arises that there was no felonious intent, which must be repelled by clear and convincing evidence before a conviction is authorized.* * * *' Kemp v. State, 146 Fla. 101, 104, 200 So. 368, 369.

"*We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary.* Even congressional power to facilitate *convictions by substituting presumptions for proof is not without limit.* Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519." (Emphasis by the writer.)

■■ In the cited case the trial court had not told the jury that intent was necessary, but specifically charged that it was not. Yet, the Supreme Court took occasion to say in substance what we have attempted to emphasize here, that is, "intent must be based" upon "all the evidence considered together", and that to say to the jury in the present case that it might find guilt as a matter of law from a presumption flowing from the fraudulent making of the return without at the same time telling it that the evidence offered by the accused to show good faith had to be taken into consideration in reaching such result, "would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime." The quotation from the Florida case

above is especially pertinent, in view of the contention of the defendant that there was no attempt to conceal his activities in that the proceeds of the fruit involved as additional income were deposited openly in banks and every effort made to facilitate the Agents of the Internal Revenue Department in ascertaining the facts.

Counsel for the Government further contend that appellant did not properly object to the charge as finally given and complained of here, as required by Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C. What took place with respect to the charge is quoted in footnote.[4]

The Government's proposed charge No. 1 embraced the same subject matter with respect to the presumption flowing from the making and signing of the return as heretofore indicated by the change made by the court, consisting of the interlining of the word "conscious" so as to produce the alleged erroneous charge given.

In connection with the discussion of this charge the Court made a general statement.[5]

---

4. "The Court: I would like to have some expression from counsel about how much time you want to argue it.

"Mr. Hill: You were asking about the argument. Do you mean argument to the jury?

"The Court: Yes, sir.

"Mr. Hill: I don't know how long we might argue the instructions.

"The Court: I will tell you, I am not going to hear much argument on the instructions. I am required to indicate my ruling in advance of the arguments. I will go over them over the week end and I will give you an exception to my ruling out of the presence of the jury. I don't propose to take a lot of time to hear a lot of argument." (R. 565–566.)

\*   \*   \*   \*   \*

"And thereupon at 9:15 o'clock a. m. Monday, January 26, 1953, Court was reconvened pursuant to adjournment of Court on Friday, January 23, 1953, and the following further proceedings were had:

"The following proceedings were had in chambers, in the absence of the jury:

"The Court: Gentlemen, Counsel has been called to come in here in chambers before the opening of court this morning in order that the Court might comply with the rule and indicate any ruling on requested charges to you before the argument. We want to take up first the Government's requested charges, and then the ones requested by the defendant, Berkovitz. As I understood on Friday you all had exchanged carbons of these, so that you each are familiar with the other's charges without going over them now, is that correct?

"Mr. Arnold: Yes, sir, we exchanged them Friday, Your Honor." (R. 568–569.)

5. "The Court: Gentlemen, I think that may save us a little time here if, after I indicate a ruling on the charge, that if you have objection that you state it at that time.

"Mr. Arnold: You want to finish the entire charge?

"The Court: Well, I will take it either way, but it may be better after each charge if you have objection to state it at that time.

"Mr. Arnold: Well, Your Honor, as to the whole charge, we do have the *objection to the giving of it, Number One,* in the eighth line of the first paragraph after the words 'And that he attempted to evade or defeat the tax thereon', we think the words 'wilfully and knowingly attempted to evade or defeat the tax' should be inserted in that.

"The Court: I think it is taken care of, down below, but if there is no objection I don't mind inserting wilfully and knowingly.

"Mr. Arnold: The second paragraph as *originally stated,* of course, I *will* object to that, but as amended, I think it just repeats what—

"The Court: I think that may be all right.

"Mr. Arnold: As to the third paragraph, the last line, or the last sentence 'the presumption is that a person intends the natural consequences of his acts, and the natural presumption would be if a person consciously, knowingly, or intentionally did not set up his income and thereby the Government was cheated or defrauded of taxes', I *think the word* conscious should be in there, 'natural consequence of his conscious acts', etc.

"The Court: I am going to add the word before 'acts,' the word 'conscious'; I don't take it that that conflicts with 'presumption of innocence'. Number two —*I will show your objection to number one of the grounds given.*" (R. 570–571.) (Emphasis by the writer.)

The exact charge now complained of was held to be erroneous by this Court in Wardlaw v. United States, 203 F.2d 884, and it is unnecessary to repeat the reasons there given. However, the fundamental error is that in a criminal case where the defense, as here, was good faith and absence of criminal intent, what was said had the effect of telling the jury as a matter of law that such proof was sufficient without more to show criminal intent, whereas this was one of the most important phases of the issues of fact that the prosecution was bound to prove beyond a reasonable doubt. The distinction is the difference between facts *tending* to establish guilt and telling the jury they may in effect consider guilt proven thereby. The Court undoubtedly may tell them they are entitled to consider the circumstances described in the charge as tending to prove intent but when it said that such intent was to be presumed from the facts stated, it necessarily shifted the burden thereafter to the shoulders of the accused to prove his innocence.

This error was further added to when the Court told the jury:

"You are instructed that *you may find from the facts that the defendant signed his individual income tax returns that he had knowledge of the contents of the return.*

"*The owner of a business need not be the actual bookkeeper to be familiar with the affairs and finances of that business, but he must be held to know that which it is his duty to know.* It is for you to determine from all of the evidence whether the defendant has knowledge of the falsity of this return, provided you also find that the return was false." (Emphasis by the writer.)

See authorities cited in Wardlaw v. United States, supra.

As to Specification of Error No. 2, we think that the matters requested in the special charges of defendant, Nos. 8 and 14 were sufficiently covered in the general charge and the judge was not required to submit them to the jury as written in defendant's request.

Portions of No. 16 were also covered in the general charge but other parts thereof were objectionable without language to support the conclusion that defendant's action was in good faith.

Specification of Error No. 4 has to do with a statement by counsel for the Government as to what was intended to be proven, was not involved in any charge of the court, and therefore furnishes no basis for complaint by the defendant.

As to Specification No. 5, in view of the disposition that we make of this case, it is not deemed necessary to rule upon the tense used as to whether accused "had" or "has" knowledge of the falsity of the return. The court below, on another trial, we take it, will make it clear that defendant should have had knowledge of the falsity when the return was signed and filed.

Specification No. 6, as to abuse of discretion in denying a bill of particulars and refusing to grant a new trial also passes out of the case. Defendant admits the information requested by the motion for particulars was subsequently obtained and the ruling here has the same effect as if the Court below had granted a new trial.

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.