**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-10263
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DENISE HILLARY YOUNG,

Defendant - Appellant.

Appeal from the United States District Court
For the Northern District of Texas

February 11, 2002

Before EMILIO M. GARZA, BENAVIDES, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Denise Hillary Young appeals her conviction in federal court on one count of forgery. Young

worked as a bank teller at the Chase Manhattan Bank in Fort Worth, Texas. After returning to the

bank after a long absence, she found in her in-box a check addressed and made payable to "Chase

Manhattan Bank FBO [for the benefit of] Denise Young." The check was made out for $43,029.81.

The check was actually meant for another Denise Young–Denise Rene Young of Tennessee.

The check bore Denise Rene Young's social security number, the name of her employer (Atmos

Energy), and an employer account number belonging to her. The check was drawn on a Banker's Trust account and represented the money in Denise Rene Young's pension fund at Atmos. The check somehow found its way into the in-box of Denise Hillary Young (hereinafter "Young"), the bank teller. Young–after expressing to a coworker her surprise and confusion at the large check–promptly endorsed the check and deposited the money into her personal account at the Omni Federal Credit Union. Young then withdrew the full balance of the check in twenty, fifty, and one hundred dollar bills as soon as it became available for withdrawal from her credit union account. By the time the Secret Service began investigating the incident about five months later, Young had spent all of the money. She told the two Secret Service agents who questioned her that she knew the check was not hers, but that she deposited it anyway.

The U.S. attorney indicted Young on one count of violating 18 U.S.C. § 513, which prohibits making, uttering or possessing a "forged" security with the intent to deceive another person. A jury convicted Young and she now appeals. Young contends that signing her own true name cannot constitute forgery as a matter of law. She also contends that the judge erred in instructing the jury that "deliberate indifference" to an obvious fact could constitute knowledge of that fact.

**I**

When Congress uses a word that has acquired a settled meaning at common law, courts must infer, unless the statute dictates otherwise, that Congress means to incorporate the established meaning of that term. *Field v. Mans*, 516 U.S. 59, 69 (1995); *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001). At common law and in state forgery statutes, "forgery" always includes signing one's own name with the intent of having the signature taken as that of another person with the same name. This fact pattern has arisen with surprising frequency. For example, in *John Barfield v. Georgia*, 29

Ga. 127 (1859), John Barfield asked a young boy named Slaughter Hill to make out two promissory notes in the total amount of $150. Barfield then bought a pony with the two slips, assuring the owner of the pony that the promissory notes were in fact the promissory notes of another Slaughter Hill, the brother of Archer Hill, and a "man of property." Barfield appealed his conviction for forgery to the Supreme Court of Georgia. That court explained: "if there are two persons of the same name, and one of them signs that name to notes, with the intent that the notes may be used in trade, as the notes of the other, is the act a forgery? And we think that it is . . . ." Other state law cases concerning two people with the same name have uniformly found that signing one's true name to a document can constitute forgery when one person intends to pass off the security as that of the other person. *White v. Van Horn*, 159 U.S. 3, 18 (1895) (interpreting Texas forgery law); *State v. Bender*, 493 N.E.2d 552 (Ohio Ct. App. 1985); *People v. Levitan*, 399 N.E.2d 1199 (N.Y. 1980); *People v. Susalla*, 220 N.W.2d 405 (Mich. 1974); *Murphy v. State*, 93 S.W. 543 (Tex. Crim. App. 1906); *State v. Farrell*, 48 N.W. 940 (Iowa 1891).[1]

---

[1]Young cites *Moore v. State*, 666 S.W.2d 632 (Tex. App. 1984), for the proposition that "signing one's own name may be a fraud or misrepresentation, but it is not a forgery." We are puzzled by this citation, as Moore expressly states that impersonating another person with the same name constitutes forgery. *Id.* at 634 ("The case is analogous to one in which a person signs his own name, but pretends to be another person with the same name. Proof of intent 'to create confusion with a person of a similar name' is sufficient to show a forgery where a person signs his own name.").

The majority of state law cases hold that signing one's own name on one's own check without sufficient funds to cover the amount of the check does not constitute forgery. In these cases, the person writing the check is not trying to pass himself off as someone else. *E.g.*, *People v. Levitan*, 399 N.E.2d 1199 (N.Y. 1980) (holding that it does not constitute forgery to make out a deed, in the defendant's own name, conveying property to which the defendant does not have title). The same principle applies when an agent signs a company check without actual authority to do so. Here again, most cases say that the defendant is not guilty of forgery, as he has not tried to pass himself off as anyone else. But neither of these principles helps Young. Unlike the defendants in these factual scenarios, Young tried to impersonate someone else. The fact that the someone else happened to have the same name as Young makes no difference.

-3-

Nothing suggests that Congress intended to depart from the settled meaning of "forgery" in enacting § 513. The statute defines "forged" as "a document that purports to be genuine but is not because it has been falsely altered, completed, signed, or endorsed, or contains a false addition thereto or insertion therein . . . ." Young's conduct certainly constitutes "falsely . . . endors[ing]" the check. She signed the check knowing that it was not meant for her. That Young was fortunate enough to find someone with an identical name, making the deception easier to accomplish and more difficult to detect, does not provide any reason for treating her differently from other people who endorse checks that do not belong to them. Nothing in the statutory definition suggests that Congress intended a departure from the settled common law understanding that someone who signs her own name in an effort to impersonate someone else of the same name commits forgery.[2]

## II

Young also challenges the district court's decision to give a "deliberate indifference" instruction to the jury. Two different elements of the crime of forgery under § 513 require the defendant to act with certain mental states. The judge properly instructed the jury that Young had to *know* that the check was not intended for her. He told the jury that it:

> may find a defendant had knowledge of a fact if you find that the defendant deliberately closed her eyes to what otherwise would have been obvious to her. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded herself to the existence of a fact.

The judge also properly instructed the jury that Young had to *intend* to deceive the Omni Federal

---

[2]In interpreting another federal forgery statute, 18 U.S.C. § 2314, the Ninth Circuit reached the same conclusion that we do here: that signing one's own name with the intent that the signature be taken as that of another person of the same name constitutes forgery. *United States v. Price*, 655 F.2d 958 (9th Cir. 1981) (Kennedy, J.).

Credit Union when she deposited the check in her account.

Young contends that the "deliberate indifference" instruction should not have been given because it conflicts with the element of the offense requiring an intent to deceive. She cites *United States v. Chen*, 913 F.2d 183 (5th Cir. 1990), for this proposition. In *Chen*, count one of the indictment charged a motel owner with "knowingly . . . maintain[ing] any place for the purpose of manufacturing, distributing, or using any controlled substance." 21 U.S.C. § 856(a)(1). Count two of the indictment charged the owner with "knowingly and intentionally rent[ing], leas[ing], or mak[ing] available for use . . . the building, room, or enclosure for the purpose of manufacturing, storing, distributing, or using a controlled substance." 21 U.S.C. § 856(a)(2). The trial judge gave a deliberate indifference instruction as to both counts of the indictment. We reversed as to count one, but not as to count two.

We reasoned that a "deliberate ignorance" instruction was inappropriate when the only fact at issue is the defendant's own intentions. The first count of the indictment required that the motel owner act with the specific purpose of using his property to distribute, manufacture, or use drugs. If someone has the specific purpose of distributing drugs–if he acts with the conscious aim of distributing drugs–he by definition cannot have been ignorant of that fact. Specific intent means in part that the defendant was aware of his own purposes–the defendant must act with a conscious or deliberate goal in mind. For count one of the indictment in *Chen*, there was no fact external to the motel owner's own purposes of which she could have been deliberately ignorant. As such, the deliberate ignorance instruction was inappropriate.

But as to count two of the indictment, we held that the deliberate ignorance instruction was warranted. That count alleged that the motel owner "knowingly" rented rooms "for the purpose" of

-5-

distributing drugs. The motel owner could have been convicted of this crime if she knew–or was deliberately ignorant of–*someone else's* purpose of using the rooms to sell drugs.

The charge under § 513 against Young resembles the second count of the indictment in *Chen*. In this case, there is a fact external to Young's own purposes of which she could have been deliberately ignorant: that the check was not intended for her. As such, the judge could properly have given the deliberate ignorance instruction. The deliberate ignorance instruction went to the knowledge element of the crime, not to the separate and distinct element requiring specific intent.

Young also contends that the judge should have been more explicit, in both his initial charges and in his responses to the jury's questions, that the deliberate ignorance instruction went only to the knowledge element of the crime, not to the specific intent element. Young claims that the trial judge exacerbated this error by not explaining to the jury what "knowingly" and "purposefully" mean in the law.

We review jury instructions for abuse of discretion, affording the trial court "substantial latitude" in describing the law to the jurors. *United States v. Chaney*, 964 F.2d 437, 444 (5th Cir. 1992); *see also United States v. Pettigrew*, 77 F.3d 1500, 1510 (5th Cir. 1996). We read the instruction as a whole to determine if it accurately reflects the law and covers the issues presented in the case. *Chaney*, 964 F.2d at 444.

As a whole, the district court's instructions adequately instructed the jury. The court's instruction informed the jury that it could find that Young had "*knowledge of a fact*" if she closed her eyes as to what otherwise would have been obvious to her. The plain language of the instruction explains that it applies only when "knowledge," not "intent," is required. Nothing in the deliberate indifference instruction undermines the district court's clear command to the jury that it could convict

-6-

only if it found that Young acted with the "intent to deceive the Omni Federal Credit Union."

We therefore AFFIRM Young's conviction for forgery.