UNITED STATES of America,
Plaintiff-Appellee,

v.

Noble C. BEASLEY, Defendant-Appellant.

No. 75–4373.

United States Court of Appeals,
Fifth Circuit.

Jan. 7, 1977.

Jonathan Shapiro, Boston, Mass. (Court appointed), for defendant-appellant.

Charles S. White-Spunner, U. S. Atty., E. T. Rolison, Jr., William R. Favre, Jr., Asst. U. S. Attys., Mobile, Ala., for plaintiff-appellee.

Before RIVES,[*] GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant Noble C. Beasley appeals his conviction for violation of the Hobbs Act, 18 U.S.C. § 1951, which makes unlawful a conspiracy to obstruct, delay, and affect interstate commerce through extortion.[1] On August 17, 1973, the Government obtained an indictment that charged Noble Beasley, James Finley, Walter Clewis, and Maynard (Ricky) Williams with conspiring, from April, 1970 to February 1973, to extort money from various promoters who sought to bring black musical groups[2] to perform in Mobile. Specifically, under the Government's theory of the case, defendant Beasley and his co-conspirators, acting under the auspices of Soul Productions, Inc., threatened these promoters with force and economic loss through boycotting and picketing of their shows, through obstruction of radio advertising and ticket sales, and through destruction of advertising placards, unless these promoters agreed to pay Soul Produc-

tions specified amounts of money. Upon payment of this money or an agreement to give Soul Productions a certain percentage of the profits, defendants in turn consented to provide allegedly superfluous promotional services and agreed not to boycott the performance.

At the first trial, in January, 1974, a jury acquitted Clewis and Williams, but convicted Finley and Beasley. On appeal, this court reversed the convictions of Finley and Beasley and ordered a new trial. *United States v. Beasley,* 513 F.2d 309 (5th Cir. 1975). Prior to the new trial, Finley died, leaving Beasley as the sole remaining defendant. At the second trial, on December 5, 1975, a jury again convicted Beasley[3] and the district court sentenced him to ten years imprisonment.

As his primary allegation of reversible error, Beasley objects to the introduction at trial of testimony of various promoters regarding statements made by Clewis and Williams indicating that these promoters' shows would be boycotted or "black mouthed" if these persons did not hire Soul Productions to promote the show. Defendant argues that Government witnesses' testimony as to statements made by Clewis and Williams was inadmissible as hearsay and that because a good deal of the Government's case rested on this hearsay, defendant's conviction should be reversed. Fed.R. Evid. 801(d)(2)(E) provides that a statement offered against a party is not hearsay if a

---

[*] Circuit Judge Rives was a member of the panel that heard oral argument but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46.

1. 18 U.S.C. § 1951 reads in relevant part:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

2. The groups listed in the indictment were the Jackson Five, James Brown, the Moments, Al

Green, Joe Simon, the Staples Singers, Curtis Mayfield, and Isaac Hayes.

3. At this second trial, the prosecution sought to prove that Beasley had conspired with Finley to violate the Hobbs Act. The district court instructed the prosecution that it could not establish a prima facie case of conspiracy by showing that Beasley had conspired with Clewis and Williams in that these two men had been acquitted of the crime at the first trial. The district court did permit the prosecution to prove acts or declarations made by Clewis and Williams in furtherance of the conspiracy; *United States v. Cravero,* 545 F.2d 406 (5th Cir. 1976), *infra* at p. 405, authorizes admission of hearsay declarations by previously acquitted "co-conspirators" when certain conditions are met.

co-conspirator of that party makes the statement during the course and in furtherance of the conspiracy. Defendant argues that this exception to the hearsay rule does not apply to Clewis' and Williams' statements in that the acquittal of these two men at the first trial prevents their classification as co-conspirators for purposes of Rule 801. This court's recent decision in *United States v. Cavero,* 545 F.2d 406 (5th Cir. 1976), forecloses defendant's argument. In *Cravero,* we held that a witness can testify to declarations made to him by an acquitted co-conspirator "if the government by independent evidence establishes a prima facie case of the existence of a conspiracy and' introduces at least 'slight evidence' to connect with the conspiracy both the declarant and the defendant against whom the statement is introduced, which requires 'a showing of a likelihood of an illicit association between the declarant and the defendant,'" 545 F.2d at 418. That standard was met here.

While this court rejects defendant's other assertions of reversible error,[4]

one of these allegations merits brief discussion. Defendant argues that the Government's cross-examination of Clewis regarding statements that he had made to I.R.S. agents during their investigation of this matter resulted in the admission of hearsay evidence that justifies reversal of the conviction. Specifically, the prosecutor cross-examined Clewis on four statements that he had made to agents and Clewis affirmed that he had made such statements.[5] We devote some discussion to this argument because this court held that the extensive questioning at the first trial of these same I.R.S. agents regarding Clewis' statement to them *without* an instruction limiting use of the testimony to impeachment purposes constituted reversible error. *United States v. Beasley,* 513 F.2d at 313. Here, at the second trial, the prosecution did not call these agents as witnesses, but instead cross-examined Clewis on a few of his statements to them. Upon examination of each of these four questions, we hold that three of them[6] constituted hearsay and, therefore, were improperly admitted into evidence and

---

**4.** The defense also argues that the evidence was insufficient to convict Beasley, that the court should remand in light of newly discovered evidence, and that the Government improperly cross-examined defense witnesses Kinsaul and Beasley about civil rights picketing of the Mobile Auditorium prior to 1970. We find each of these asserted errors to be without merit. With reference to the last contention, the defense itself opened up the matter of civil rights picketing in its direct examination of Kinsaul. While the prosecution later raised this issue again in its cross-examination of Beasley, we do not find the prosecution's line of questioning sufficiently prejudicial, under F.R.Evid. 403 to justify reversal in that the jury was constantly reminded that the civil rights picketing itself was totally proper; rather, the prosecutor questioned Beasley on his prior civil rights picketing in order to show that Beasley's later threats of boycotts and pickets carried some weight.

**5.** R., p. 555–58.

**6.** (1) The prosecution asked Clewis if he had told I.R.S. agents that, prior to the formation of Soul Productions, promoters performed the same functions that Soul purportedly undertook; Clewis responded affirmatively. R., p. 556. Of course, asking Clewis what he had told agents called for a hearsay response within

the meaning of Rule 801(c) that "hearsay is a statement, other than one made by the declarant *while testifying at the trial or hearing,* offered in evidence to prove the truth of the matter asserted" [here, that Soul merely performed functions previously assumed by the promoters themselves.] Yet, since Clewis never denied the correctness of the statement itself on cross-examination or re-direct, its potential damage lay only in the assertion that Soul and the promoters performed identical services. Certainly, had the prosecutor questioned Clewis directly on the assertion, itself, he would have evoked no hearsay response in that Clewis' testimony on the duties performed by Soul Productions was a matter well within his personal knowledge as manager of the auditorium; *see* Fed.R.Evid. 602. Therefore, the prejudice inherent in this statement lay in the assertion, itself, not in the hearsay nature of the statement. *See Feutralle v. United States,* 209 F.2d 159 (5th Cir. 1954) (introduction of statement does not constitute reversible error when the truth of the matter asserted in the statement was admitted to be as claimed and where statement did not include hearsay recitation; such a situation is different from a case where witness denies original statement so that it is proper only for impeachment, not as substantive evidence).

(2) The prosecution also asked Clewis if he had told agents that Clein and Wynn, two pro-

that one of them[7] was properly admitted for the purpose of impeaching the witness, but that no instruction limiting its use to impeachment was given. After much deliberation, we hold that, in light of the abundant properly admitted evidence against defendant and of the paucity of inadmissible testimony introduced, those improperly admitted statements constituted only harmless error that did not infect the validity of defendant's conviction. *See Lutwak v. United States,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953) (court's failure to properly limit hearsay testimony of co-conspirator harmless error where only one instance of a declaration requiring limitation and where overwhelming evidence of guilt of defendant.) We are aware that this court reversed the conviction resulting from the first trial on the basis of an alleged similar evidentiary error. The quantum of inadmissible evidence at the second trial, however, was substantially less than that at the first. Therefore, having examined the record to determine whether admission of the evidence constituted reversible error, we conclude that the error was harmless and that defendant's conviction should stand.

AFFIRMED.

moters, had to pay off Soul Productions; Clewis affirmed that statement. R., p. 555. Again, as discussed in (1), merely asking Clewis what he had told agents called for a hearsay response. The assertion itself—that Clein and Wynn paid off Soul—however, also involves hearsay in that Clewis was necessarily testifying as to what Clein and Wynn told him. The prejudicial effect as to Clein's statement was minimized, however, by Clein's identical testimony on direct examination. R., pp. 162–63, 180, 194–95, 196. *See United States v. Williamson,* 450 F.2d 585, *cert. denied,* 405 U.S. 1026, 92 S.Ct. 1297, 31 L.Ed.2d 486, reh. denied, 406 U.S. 939, 92 S.Ct. 1784 (1971) (testimony of Witness 1 as to what Witness 2 said regarding act of co-conspirator was hearsay, but not prejudicial when Witness 2 himself testified about the same act).

(3) The prosecution asked Clewis if he had told agents that Ricky Williams, a local disc jockey, would not promote an entertainer's records if the latter did not pay off Soul Productions. R., p. 556–57. Although the prosecution could have inquired directly whether Williams had made such a statement, possibly justifying the hearsay response under the co-conspirator exception to the hearsay rule, Rule 801(d)(2)(E), he did not so condition introduction of the testimony. Accordingly, this statement is clearly inadmissible hearsay.

7. The prosecution inquired whether, to Clewis' knowledge, a promoter named Henry Wynn had refused, since 1969, to bring black shows to Mobile. R., p. 558. Here, Clewis answered no and the prosecutor countered with a prior statement by Clewis that Wynn had refused to bring shows to Mobile and to pay this extortion money; Clewis then affirmed the prior statement as correct. A proper subject of impeachment, any error regarding this question would have occurred only through failure of the court to so limit the prior statement.