**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Joseph CHIANTESE and John Joseph Cerrella, Defendants-Appellants.**

No. 75–3534.

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1977.

George D. Gold, Miami, Fla., James J. Hogan, Miami Beach, Fla., for defendants-appellants.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., Ann T. Wallace, George S. Kopp, Atty., Dept. of Justice, Washington, D. C., Gary L. Betz, Special Atty., Dept. of Justice, Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, and FAY, Circuit Judges.

CLARK, Circuit Judge:

The inconsistency of our decisions on how a jury may be instructed on proof of intent and a much too frequent recurrence of erroneous charges warrant this en banc review and a new solution. The simple appearance of the issue is deceptive. To say that specific intent may be inferred from a defendant's knowing conduct seems only to iterate a truism. The problems start when words are changed or added which shift the prosecution's burden of proof and when the charge is used where the defendant's act is equally susceptible of innocent motive and guilty purpose. Because our decisions have fully articulated the supportive reasoning, what's past is proper prologue to our action today.

A Certain *Mann* Went Down . . .

Our watershed is *Mann v. United States*, 319 F.2d 404 (5th Cir. 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474

(1964). Dr. Nathan Mann was convicted of wilfully attempting to evade payment of income taxes by omitting items of taxable income from his returns. The government's proof disclosed erroneous entries on the doctor's books concerning cash fees received and unreported items of taxable income reflected in bank deposits and bond purchases. Dr. Mann's defenses were that his accountant was negligent and that gifts explained the money used to purchase the bonds. The trial court gave this charge to the jury, without objection from Dr. Mann:

> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

We reversed. Although finding the evidence sufficient, we held that the instruction constituted plain error. Citing *Berkovitz v. United States*, 213 F.2d 468 (5th Cir. 1954); *Wardlaw v. United States*, 203 F.2d 884 (5th Cir. 1953); and *Bloch v. United States*, 221 F.2d 786 (9th Cir.), *reh. denied*, 223 F.2d 297 (1955), Judge Gewin wrote for the court:

> The opinions held that the effect of the charge was to tell the jury that it could draw the conclusion that the defendant intended to defeat the payment of the tax from the mere fact that an incorrect return was filed; and resulted in a shifting of the burden of proof from the Government to the defendant. . . .

> . . . . .

> The instructions in the instant case go beyond the bounds of the charge set out in the above cited cases. If the charge had ended when the jury was told that a person is presumed to intend the natural consequences of his own acts, when considered in the light of the charge as a whole, there would have been no error.

When the words, "So unless the contrary appears from the evidence" were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results.

319 F.2d at 409.

*Mann* also held that the quoted charge conflicted with the presumption of innocence and was not cured by consideration of the instructions as a whole.

> Even though the trial judge did give an accurate charge on the necessity of intent and the burden of proof, we hold that to leave the jury with that part of the charge complained of in this case was not cured by what was said elsewhere in the charge. Instructions to the jury must be consistent and not misleading. The fact that one instruction is correct does not cure error in giving another inconsistent one.

*Id.* at 410.

Despite Judge Gewin's explicit condemnation of the "So unless the contrary appears from the evidence" language as plain error, it has spawned an anfractuous line of precedent.

### Before *Mann*

#### A. Background Case Law

In 1897 the Supreme Court analyzed an intent-inferred-from-acts instruction in *Agnew v. United States*, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624. The jury was told:

> The rule of law in regard to intent is that intent to defraud is to be inferred from willfully and knowingly doing that which is illegal, and which, in its necessary consequences and results, must injure another. The intent may be presumed from

the doing of the wrongful or fraudulent or illegal act, and in this case, if you find that the defendant placed that which was worthless or of little value among the assets of the bank at a greatly exaggerated value, and had that exaggerated value placed to his own personal account upon the books of the bank, from such finding of fact you must necessarily infer that the intent with which he did that act was to injure or defraud the bank; but this inference or presumption is not necessarily conclusive. There may be other evidence which may satisfy the jury that there was no such intent, but such an inference or presumption throws the burden of proof upon the defendant; and the evidence upon him in rebuttal to do away with that presumption of guilty intent must be sufficiently strong to satisfy you, beyond a reasonable doubt, that there was no such guilty intent in such transaction.

The Court's reasoning in approving the use of this charge is epitomized in the following excerpts:

> Undoubtedly, in criminal cases, the burden of establishing guilt rests on the prosecution from the beginning to the end of the trial.

> But, when a prima facie case has been made out, as conviction follows unless it be rebutted, the necessity of adducing evidence then devolves on the accused.

> .    .    .    .    .

> This [instruction] was in application of the presumption that a person intends the natural and probable consequences of acts intentionally done, and that an unlawful act implies an unlawful intent. * * * [I]n other words, that, as the presumption put the intent beyond reasonable doubt, it must prevail, unless evidence of at least equivalent weight were adduced to the contrary.[1]

*Id.* at 50, 17 S.Ct. at 240–41.

*Cramer v. United States*, 325 U.S. 1, 65 S.Ct. 918, 89 L.Ed. 1441 (1945), was a trea-son case in which intent was a central issue. In discussing the application of the constitutional two-witness proof requirement to this element, the Court stated:

> What is designed in the mind of an accused never is susceptible of proof by direct testimony. If we were to hold that the disloyal and treacherous intention must be proved by the direct testimony of two witnesses, it would be to hold that it is never provable.    .    .    .

> Since intent must be inferred from conduct of some sort, we think it is permissible to draw usual reasonable inferences as to intent from the overt acts. The law of treason, like the law of lesser crimes, assumes every man to intend the natural consequences which one standing in his circumstances and possessing his knowledge would reasonably expect to result from his acts.

*Id.* at 31, 65 S.Ct. at 933.

The final Supreme Court precedent in our overview is *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). There the Court reversed a conviction for taking government property (spent shell casings from a practice firing area) for lack of proof of intent.

> Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury.    .    .    .

> It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. It often is tempting to cast in terms of a "presumption" a conclusion which a court thinks probable from given facts.    .    .    .

> We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated

---

1. In *United States v. Wilkinson*, 460 F.2d 725, 730 (5th Cir. 1972), we noted doubt that the court would repeat this rationale today. Clear-ly, the language used was not then intended as model text for a jury charge in all intent cases.

fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary. . . .

. . . Had the jury convicted on proper instructions it would be the end of the matter. But juries are not bound by what seems inescapable logic to judges.

*Id.* at 274–76, 72 S.Ct. at 255–56. (Footnote omitted.)

Within 2 years of *Morissette*, this circuit reversed two tax evasion convictions because trial courts charged juries that criminal intent could be presumed from knowing acts. The identical instruction was given in each case. In the first, *Wardlaw v. United States*, 203 F.2d 884 (5th Cir. 1953), the court set out the condemned instruction:

The presumption is that a person intends the natural consequences of his acts, and the natural presumption would be if a person consciously, knowingly, or intentionally did not set up his income and thereby the government was cheated or defrauded of taxes, that he intended to defeat the tax.

It then reasoned:

The appellant duly excepted to this charge. We think the exception was good and the giving of this charge was prejudicial error. The intent involved in this offense is not inherent in the act itself, but is a specific intent involving bad purpose and evil motive and that specific intent must be proved by or clearly inferred from the evidence.

*Id.* at 887. The second case, *Berkovitz v. United States*, 213 F.2d 468 (5th Cir. 1954), cited *Wardlaw* and added this additional support for reversal:

. . . [T]he fundamental error is that in a criminal case where the defense, as here, was good faith and absence of criminal intent, what was said had the effect of telling the jury as a matter of law that such proof was sufficient without more to show criminal intent, whereas this was one of the most important phases of the issues of fact that the prosecution was bound to prove beyond a reasonable doubt. The distinction is the difference between facts *tending* to establish guilt and telling the jury they may in effect consider guilt proven thereby. The Court undoubtedly may tell them they are entitled to consider the circumstances described in the charge as tending to prove intent but when it said that such intent was to be presumed from the facts stated, it necessarily shifted the burden thereafter to the shoulders of the accused to prove his innocence (emphasis in original).

*Id.* at 476.

This type of charge came before us again in one other pre-*Mann* case, *Windisch v. United States*, 295 F.2d 531 (5th Cir. 1961). The court set out the challenged instruction:

The law presumes that every man's intent legitimately consists of his own action. A man is charged with the knowledge of that which naturally and normally, from all the evidence, flows or results from his action normally done or performed.

It then stated:

Lifted out of context, the charge is confusing, if not erroneous; a jury might be misled into believing that Windisch's omission of certain items of income raised a presumption that he intended to evade his income tax. When a specific intent to commit a fraud is a necessary element of the offense, proof of such intent may not be eliminated by the loose generalization that a man is presumed to intend the natural consequences of his acts. *Wardlaw v. United States*, 5 Cir. 1953, 203 F.2d 884, *Berkovitz v. United States*, 5 Cir.,

1954, 213 F.2d 468. We do not approve the charge standing by itself or only vaguely qualified. Here, however, the trial judge took the curse off the charge by spelling out in great detail the necessity for proof of the requisite specific intent. *Bernstein v. United States*, 5 Cir., 1946, 234 F.2d 475; *Imholte v. United States*, 8 Cir., 1941, 226 F.2d 585; *Banks v. United States*, 8 Cir., 1955, 223 F.2d 884, 889; *Legatos v. United States*, 9 Cir., 1955, 222 F.2d 678; *Bateman v. United States*, 9 Cir., 1954, 212 F.2d 61.

*Id.* at 532–33.

### B. *Mann's* Form

In 1957, Judge William C. Mathes of the Southern District of California, authored 70 recommended criminal instructions. *Some Suggested Forms for Use in Criminal Cases*, 20 F.R.D. 231. Among these was Form 39, Proof of Intent. It provided:

> Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.
>
> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.
>
> In determining the issue as to intent the jury are entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid determination of state of mind.

*Id.* at 264–65. The second paragraph will be recognized as the source of the precise language held in *Mann* to constitute plain error. Judge Mathes's notes disclose that the language was drawn from the reasoning of earlier decisions, including *Agnew, Cramer,* and *Morissette, supra.* He obviously felt he had avoided the impact of his own circuit's decision in *Bloch v. United States*, 221 F.2d 786 (9th Cir.) *reh. denied,* 223 F.2d 297 (1955), a tax evasion prosecution, which found erroneous the same instruction reversed in *Wardlaw* and *Berkovitz.*[2]

In 1960, Judge Mathes issued a revised version of suggested criminal instruction. *Jury Instructions and Forms for Federal Criminal Cases*, 27 F.R.D. 39. Although Form 39 became Form 4.06 in this later compilation, its text remained unchanged, as did the annotation.[3]

---

**2.** The presumption language used in the *Bloch* instruction was changed to an inference, and the jury was given other cautions approved by the Ninth Circuit in *Legatos v. United States*, 222 F.2d 678 (1955), and *Bateman v. United States*, 212 F.2d 61 (1954), which also were cited by Judge Mathes to support the form he proposed.

**3.** After *Mann* and similar precedent in other circuits ensued, the Mathes forms were published in book format. While changes in the original form ebbed, then slowly flowed away from the *Mann* format, the changes (though proceeding with some expressions of reluctance) have been dramatic.

In 1965 Judge Mathes, joined by Chief Judge Edward J. Devitt of the District of Minnesota, published *Federal Jury Practice & Instructions.*

The paragraph of text which *Mann* called plain error underwent minor revisions and appeared as the centerpiece of § 10.16. The annotation acknowledged that several decisions had criticized this portion of the form and also took note of the United States Supreme Court's refusal to take certiorari to resolve the direct conflict between our reversal in *Mann* and the Ninth Circuit's affirmance of *Sherwin v. United States*, 320 F.2d 137 (1963), which involved the same charge.

In the 1968 pocket part of this publication, edited by Devitt and Mr. David F. Self, the text was changed by the addition of a paragraph reading:

> But the jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

### We Hear a Different Drummer-*Mann*

*Mann* is one of the most discussed, if not the most distinguished, cases in our circuit.[4] Would that it had such notoriety among trial judges! To this date, the case has never been overruled or criticized, yet the *Mann*-outlawed charge appears here regularly. More remarkably, the language *Mann* found to be plain error has been at the heart of approximately an equal number of affirmances and reversals.

*Mann* was first distinguished in *Estes v. United States*, 335 F.2d 609 (5th Cir. 1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965), a mail fraud and securities violation case. One instruction to the jury was:

> The law provides a rebuttable presumption that every man intends the natural and probable consequences of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud can be presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed. It is a well settled rule that the intent can be presumed and inferred from the result of the action.

We affirmed, reasoning as to *Mann's* effect on the charge as given:

> The portion of the charge complained of was not directed to any particular action of appellant. It contained a correct statement of the general presumption of intent. It was immediately followed by a clear-cut instruction specifically enumerating the *sine qua non* of the offenses involved. The court without equivocation charged that the appellant was presumed innocent until proven guilty beyond a reasonable doubt. When the instruction is read as a whole there does not appear any such inconsistency or other vice as would render it prejudicially erroneous. (Footnote omitted.)

335 F.2d at 617.

Our second case distinguishing *Mann* is *Helms v. United States*, 340 F.2d 15 (5 Cir. 1964), *cert. denied*, 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965), in which the precise language condemned in *Mann* was used in

The supporting annotation was swelled by adverse precedent which caused the editors to opine that the propriety of using the critical paragraph "is now in severe doubt."

The 1970 edition of *Federal Jury Practice & Instructions* by Mathes and Professor Charles Blackmar reduced the general instruction on proof of intent to one paragraph, § 13.06:

> Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind. It is ordinarily reasonable to infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.

This was adapted from District of Columbia Criminal Jury Instruction No. 43. Whereas the text shrank, the annotation continued to expand with critical and cautionary comment, particularly in the 1976 pocket part.

In the 1977 edition, Devitt and Blackmar replaced the final sentence set out above with this second paragraph in § 14.13:

> You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence.

In the current annotation, the editors refer to the present instruction as a technical one which, if misused, would court reversal. They caution that problems exist with the use of this kind of instruction in any case in which specific intent is an element of the crime and that intent charges which speak in terms of presuming intent from acts or omissions are in severe doubt.

4. *Mann's* debut as precedent was made in the en banc case of *Edwards v. United States*, 334 F.2d 360 (5th Cir. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965). In this gambling tax prosecution, *Mann* was cited as supporting the semantic distinctions *Edwards* drew between the use of "inference," "rebuttable presumption," and "presumption" in instructions regarding a defendant's knowledge of the law. We held the charge used in *Edwards*, though not correct, did not constitute plain error since defendants had produced no evidence that they did not know the law.

charging the jury. We affirmed, however, explaining:

In holding that the giving of the instruction was plain error, we were careful to point out in *Mann* that "[t]he sole defense of Dr. Mann was his contention that he did not intend to evade or defeat, the tax imposed; and he denied that his conduct was wilful or that he had any evil motive or intent to defraud." . . The present case presents the opposite extreme. If the defendant actually instructed Borel to prepare the two sets of records and used the false tickets in making his income tax returns, there cannot be much doubt about his willfulness or criminal intent. While in both cases the government bore the burden of proving beyond a reasonable doubt the defendant's willfulness or criminal intent, in the *Mann* case the purely mental state was the crucial issue while here the contest centers about objective conduct, the preparation of two sets of records and the use of the false tickets in making defendant's income tax returns. (Citation omitted.)

*Id.* at 18–19.

In *Nagell v. United States*, 392 F.2d 934 (5th Cir. 1968), the *Mann* instruction was given in a bank robbery case in which the defense of insanity was a prominent issue. Applying a combination of the reasoning in *Mann* and *Helms*, we found the charge to be error. *South v. United States*, 412 F.2d 697 (5th Cir. 1969), reversed a gambling conviction in which the *Mann* instruction was used, citing *Mann* but not *Helms*. In *Henderson v. United States*, 425 F.2d 134 (5th Cir. 1970), a mail fraud case, we reversed for a *Mann* charge, with this discussion:

The government strenuously argues that this Court has narrowly limited *Mann* in its decisions in *Helms v. United States*, 340 F.2d 15 (5 Cir. 1964) and *Estes v. United States*, 335 F.2d 609 (5 Cir. 1964). The government's reliance on these cases is misplaced. In *Estes* the charge did not contain language which was found in *Mann* to be especially harmful, *i. e.,* "unless the contrary appears from the evidence." Furthermore, the *Estes* charge contained additional instructions immediately following the alleged erroneous charge that "fraudulent intent is not presumed or assumed." Here, the alleged erroneous instruction does not contain this curative language.

In *Helms* we did not limit the *Mann* holding but merely distinguished the two cases on the basis that *Mann* dealt principally with the intent or mental state of an accused while *Helms* dealt only with objective conduct. . . .

In this case we find *Mann* to be controlling and therefore hold that the district court committed reversible error in giving this instruction. In *Helms*, if the objective conduct were proven, "there [could not] be much doubt about * * * willfulness or criminal intent." Here, a central part of appellants' defense was that they did not make statements *known to be false or with the intent to defraud* (emphasis in original). . . .

*Id.* at 144–45.

The *Mann* charge language appeared next in *United States v. Jenkins*, 442 F.2d 429, 437–38 (5th Cir. 1971). We held the trial court had avoided the vice of *Mann* because it added to the charge the following language:

"Unless otherwise instructed, in determining the issue as to intent, the jury is entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence in the case which may aid in determination of state of mind.

"But the jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence."

*United States v. De Simone*, 452 F.2d 554, 556 (5th Cir. 1971), *cert. denied*, 406 U.S. 959, 92 S.Ct. 2067, 32 L.Ed.2d 346 (1972), followed the *Jenkins* distinction because the *Mann* charge was followed by the language *Jenkins* found curative, repeated four times.

The very next year, however, *United States v. Driscoll*, 454 F.2d 792, 794–96 (5th Cir. 1972), reversed a securities transportation conviction because the *Mann* charge was given. Curative charges were found to be inconsistent and misleading so as to leave the charge as a whole prejudicial because it shifted the burden of proof to the defendant.

*United States v. Wilkinson*, 460 F.2d 725, 729–34 (5th Cir. 1972), involved a charge couched in the same rebuttable presumption language approved in *Estes*. Wilkinson's mail fraud conviction was affirmed but not without an extensive discussion of *Mann* and its progeny to that date. Writing on water as it turns out, we attempted to bury the use of "rebuttable presumption" and "so unless the contrary appears" and to supplant the superceded but enduring form book charge:

> The fact that at this late date in the development of the law on proof of specific intent so lengthy a discussion of the problem is necessary here, highlights the need for more precise direction. We deem it unwise to let this case go on the books as another exception to the rationale of *Mann*, or worse, be understood that the instruction language used here should be repeated. The instruction given *Wilkinson's* jury, though not reversible under the circumstances here present, sails perilously close to the shoal of an erroneous shifting of the burden of proof.
>
> An instruction which states:
>
> It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that the defendant possessed the required criminal intent.
>
> is a common sense rule of circumstantial evidence which could not involve the hazard of less precise instructions. Other or further instructions that speak in terms of the law's rebuttable presumptions, or one which indicates that an intended inference completes the government's proof unless other evidence to the contrary is produced, can amount to plain error. Such instructions have been universally criticized. Not only do such instructions carry the possibility of confusion, they are probably unnecessary. Surely the average juror already knows—though he may never have heard it articulated in legalistic jargon—that it would be reasonable to infer that a man intends what he consciously does. It is both unwise and pointless to muddle this reasonable notion and risk a violation of due process, *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), by hinting that a defendant may have to come forward with evidence on this issue, lest he be presumed a criminal.
>
> We hold today that the use of the *Estes'* "rebuttable presumption" language and *Mann's* "So unless the contrary appears" language, should be discontinued; and where the nature of the case and the remaining portions of the charge do not alleviate the problem created, convictions based upon verdicts returned by juries so instructed will not be allowed to stand. (Footnotes omitted.) [5]

*Id.* at 733–34.

The following year, *United States v. Trexler*, 474 F.2d 369, 371 (5th Cir.), *cert.*

---

5. These sentiments parallel those expressed by the United States Court of Appeals for the Second Circuit in *United States v. Barash*, 365 F.2d 395, 402 (1966):

> Despite its ancient vintage see *Agnew v. United States*, 165 U.S. 36, 53, 17 S.Ct. 235, 41 L.Ed. 624 (1897), utterance of the quoted platitude serves no useful purpose, since insofar as the statement has logical validity the jury would know it anyhow; more important, in a bribery case it creates a serious risk that the jury might think the Government's burden of showing the required specific intent could be met by proof of payment alone

*denied*, 412 U.S. 929, 93 S.Ct. 2759, 37 L.Ed.2d 157 (1973), reinforced *Wilkinson* in a decision approving an instruction which stated that it is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. *See also United States v. Anderson*, 523 F.2d 1192, 1197 (5th Cir. 1975).

An instruction couched in *Mann* terms did not reappear until *United States v. Durham*, 512 F.2d 1281, 1285–88 (5th Cir.), *cert. denied*, 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975). After reiterating the now decade of decisions critical of this sort of charge, we concluded that the *Helms* rationale was still alive, well, and controlling in Durham's case. Before leaving the subject, however, the court again commended use of the form of instruction suggested in *Wilkinson*. Nine days later, another panel reversed the same district judge in an extortion case, faulting his use of the *Mann* charge and two evidentiary rulings. *United States v. Beasley*, 513 F.2d 309 (5th Cir. 1975).[6] The same Beasley and the same trial judge were involved four months later in an appeal from a conviction for tax evasion. *United States v. Beasley*, 519 F.2d 233, 243–44 (5th Cir. 1975), *vacated and remanded on other grounds*, 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976). The curative language approved in *Jenkins* was given four times. Citing *De Simone, supra*, we affirmed.

Like the proverbial bad penny, *Mann* was back the next year in *United States v. Duke*, 527 F.2d 386 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976). Because the defendant admitted possession of a substance he knew was marijuana and had been previously convicted for marijuana possession, we found the use of the charge with several curative statements was not reversible error but concluded:

> "unless the contrary appears from the evidence"—presumably evidence the defense would have to present.

> *See also United States v. Diggs*, 527 F.2d 509, 515 (8th Cir. 1975).

While we do not find it necessary to reverse this particular case, we emphasize that the *Mann* charge has been declared to constitute error many times since the *Mann* decision was handed down in 1963. Why trial judges continue to maintain this charge in their repertoire is a mystery to us. We cannot too strongly admonish them to discontinue its use immediately. The charge suggested in *Wilkinson, supra* at 733, should be an acceptable substitute.

527 F.2d at 393.

In 1977, we reversed the wiretapping and perjury convictions of a city police chief in which the trial court had given an instruction which stated:

> It is reasonable to infer that a person intends the natural and probable consequences of what he does or knowingly fails to do unless some contrary intention appears from the evidence.

*United States v. Schilleci*, 545 F.2d 519, 524–26 (5th Cir. 1977). The court observed that lack of specific intent was the "hingepin" of the chief's defense and that his mental state was a crucial issue in gauging intent. Although the jury was charged that the burden of proof was on the government, we noted that this curative instruction did not follow the objectionable *Mann*-type, burden-shifting language. Rather, the *Mann* charge was immediately followed by language telling the jury it could draw the inference that the defendant intended all the consequences that someone standing in like circumstances and possessing like knowledge should reasonably have expected to result. The court made clear that though the charge was error, it did not base its reversal on that alone. The trial court's failure to charge on the defense of ignorance of the law, its delivery to the jury of a written copy of the charge, and its failure to require that the charge be considered as a whole, as well as the *Mann* charge error

6. The appeal from Beasley's conviction on retrial after this reversal resulted in an affirmance. *United States v. Beasley*, 545 F.2d 403 (5th Cir. 1977). No *Mann* instruction problem was discussed.

were, taken together, the grounds for requiring a new trial.

In *United States v. Roberts*, 546 F.2d 596 (5th Cir.), *cert. denied sub nom., Mancini v. United States*, 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977), the same panel that decided *Schilleci* affirmed an extortion conviction despite the verbatim inclusion of the *Mann* charge in the court's instructions to the jury. The court relied on curative instructions which placed the burden of proof on the government as well as the type of charge and evidence presented in Roberts's case which included undisputed threatening phone calls. The court noted that some circuit precedent illustrated an erosion rather than reinforcement of *Mann*.

Two days later, the case at the en banc bar was published. *United States v. Chiantese*, 546 F.2d 135 (5 Cir. 1977). The holding was explicit:

> While it is interesting to recognize that ever since *Mann* we have created exception, allowed dilutions and even allowed miracle cures to avoid reversing a case solely on the giving of a *Mann* charge, at the same time we admonished the lower court repeatedly to stop using this charge. In *Durham*, we noted our emphatic disapproval of the *Mann* charge and even cited the lower court to a charge given in *Wilkinson* which would be acceptable. *Durham* at 1289. In *Duke*, we pondered why trial judges continue to maintain the charge in their repertoire. "We cannot too strongly admonish them to discontinue its use immediately." *Duke* at 393. Again we cited them to the acceptable charge suggested in *Wilkinson*.
>
> Thus we have preached, and we assumed that the district courts have read our earlier opinions, but as with the boy who yelled wolf too often, our warnings have gone unheeded. We have made efforts to drown, destroy and inter the *Blue* charge [6] with similar lack of success. After all of this preaching and admonitions we conclude that this case should be the vehicle to bury the condemned, prejudicial charge once and for all. And the way to do it is to reverse the case without adding to the confusion, or worse, an invitation to trial judges to flirt with its use in the hope that we will find some extenuation in the use accompanied by some high sounding, but unheeded, pontifical platitudes that surely never again will it be employed. Until *Mann* is buried by the Court en banc it is very much alive. It is not—the word is not—to be used, and no one, prosecutor or judge can hope to be resuscitated.

*Id.* at 137. Footnote 6 in the above quotation refers to *United States v. Blue*, 430 F.2d 1286 (5th Cir. 1970), and *United States v. Oquendo*, 490 F.2d 161 (5th Cir. 1974), to which we now add *United States v. Womack*, 454 F.2d 1337 (5th Cir. 1972), and *United States v. Williams*, 473 F.2d 507 (5th Cir. 1973). In *Womack* we noted that though it was possible to distinguish the charge criticized but passed in *Blue*, its recurrence indicated it should be disavowed. *Williams* collected and discussed the *Blue* charge precedent and reversed, as did *Oquendo*. A more recent example of our refusal to search for ways to save condemned charges is *United States v. Partin*, 552 F.2d 621 (5th Cir. 1977), *following United States v. Hall*, 525 F.2d 1254 (5th Cir. 1976), in flatly refusing to search for cures to a "slight evidence" instruction.

The episode which brings circuit history current is *United States v. Netterville*, 553 F.2d 903 (5th Cir., 1977). Going back past *Mann* to *Wardlaw* and *Berkovitz*, the trial court gave this instruction without objection:

> The law *presumes* that every man intends the natural and probable consequences of his own knowing acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud can be *presumed* when the unlawful act which results in loss or injury is proved to have been knowingly committed. It is a well settled rule that the intent can be *presumed* and inferred from the results of the action. (Emphasis supplied.)

*Id.* at 917. Although the instruction is couched in terms of an irrebuttable presumption, we refused to find the instruction to be plain error because the charge as a whole made the government's burden of proof "unmistakably clear."

Unlike the form book editors, see note 3 *supra,* many district courts in this circuit have not bothered to restructure their charge on proof of intent. Perhaps this is because our precedents over 14 years furnish no consistent or predictable rule that would encourage the change. Set amid the efforts to separate error from reversal, hortatory words and dire predictions have availed us nought but more appeals.

In the light of this history of wasted judicial resources and ineffective communication, a majority of the court en banc has determined that directory action of a supervisory nature must supplant the more normal adjudicatory process if we are to eliminate this chronic issue. We therefore direct that in all trials commenced 90 days after the date of this opinion:

■ 1. No district court in this circuit shall include in its charge to the jury an instruction on proof of intent which is couched in language which could reasonably be interpreted as shifting the burden to the accused to produce proof of innocence. This includes charges such as:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. *So unless the contrary appears from the evidence,* the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

or

The *presumption* is that a person intends the natural consequences of his acts and the natural presumption would be if a person consciously, knowingly, or inten-

tionally acted, he intends to violate the law.

or

The law *presumes* that every man intends the natural and probable consequences of his own knowing acts. Wrongful acts knowingly or intentionally committed can neither be justified or excused on the ground of innocent intent. The intent to injure or defraud can be *presumed* when the unlawful act which results in loss or injury is proved to have been knowingly committed.

■ 2. The error in giving such a burden-shifting charge will not be absolved because other phrases defining the proper burden of proof are included in the instructions, no matter how often such corrective phrases are repeated. This court no longer will harmonize inconsistent charges to effect the cure of a charge in violation of paragraph 1.

■ 3. We refuse to classify the giving of a charge in violation of paragraph 1, whether objected to or not, as the type of error which will automatically produce reversal. If, despite our action today, the error should recur, the weighing of its harm to the accused shall remain a judicial matter to be resolved in the context of each case where it occurs. Such weighing, however, shall not include consideration of whether a defective charge has been cured by prior or subsequent statements.

■ 4. While the precise composition of instructions in any future case is a matter for the district judge in the first instance, we commend the form suggested in *Wilkinson* to every judge now using any improper form of instruction on proof of intent:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has

proved beyond a reasonable doubt that the defendant possessed the required criminal intent.

Alternatively, we recommend the form of instruction contained in the 1977 edition of *Federal Jury Practice & Instruction*, § 14.-13:

> Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and [any act] done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.
>
> You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence.

This recommendation is not to be taken as an authorization to use any form of charge on proof of intent in every case where the intent of the accused may be put in issue. The propriety of giving any charge at all on this subject remains a matter for independent judicial determination in each separate cause.

█ 5. The directions contained in paragraphs 1–4 above are to be applied prospectively only.

█ We hold in the case at bar that the law of this circuit has been too uncertain to warrant the reversal of otherwise valid convictions based upon a trespass against language condemned here or in any prior opinions.[7] That portion of the panel opinion in this action predicating reversal of the convictions of the defendants on the use of the *Mann* charge is vacated, and the cause is remanded to the panel with directions to reconsider the rights of the defendants in light of this decision.

VACATED IN PART and REMANDED TO THE PANEL.

BROWN, Chief Judge, concurring:

When I wrote the panel opinion in this case, 546 F.2d 135, at 137, I felt that after years and years of pleading, preaching, and begging District Judges to read, heed and follow *Mann*'s handwriting on the wall, the only way to bring the lesson home to trial judges was to state our holding, not in words as we had so fruitlessly done, but in action, the consequences of which would put on the already overburdened Judge the useless necessity of a second trial.

While that technique does not survive as an automatic reversal, perhaps it has in judicial institutional statesmanship served an even more useful purpose. For the Court, through the excellent opinion by Judge Clark, sees its own aberrations which go a long way toward justifying unconcern by District Judges who sought guidance not so much in what we said but in what we did.

Now that the Court speaks loud and clear, the need for the stringent therapy of automatic reversal largely disappears as a practical matter. I confess that the pungent dissenting-concurring opinion of Judge Godbold highlights concerns I share, but it does not impel me to a dissent.

Now after 14 years of *Mann* and manless *Mann*, we are overwhelmingly of the view that *Mann* and its satellites are forbidden. By the Court's opinion we know what we have imposed on ourselves. The District Judges, with a time interval to eradicate from mind and jury instruction forms, know what we have imposed on them.

It is up to each of us to carry this out.

JAMES C. HILL, Circuit Judge, with whom GEE, Circuit Judge, joins, specially concurring.

One of the most important duties of courts of appeals is to define the law so

---

7. *Cf. Mann* with the subsequent cases of *Jenkins* and *De Simone*, then the latter two cases with *Driscoll*.

that litigants, lawyers, and district court judges can determine their rights and duties with some degree of certainty. The majority opinion is an excellent example of our court's undertaking to do just that. Without presuming to prejudge future cases, the court nevertheless determines this cause, and, in doing so, the court clearly and positively articulates its conclusions concerning the propriety *vel non* of the jury instruction under consideration. Further, by making clear suggestions for instructions in future cases, the court's opinion provides guidance for district judges and counsel. Instructions conforming with the court's guidelines will be correct and adequate.

The special nature of my concurrence does not stem from any mental reservation concerning the instructions that the court has given so well, but from the court's underlying premise in formulating these instructions. This court has waged a long and frustrating war with the *Mann* charge, a war with which I cannot agree.

The court in *Mann* held that the charge in that case, that the jury could infer that a person ordinarily intends the natural and probable consequences of his intentional acts "unless the contrary appears from the evidence," impermissibly shifted the burden of proof to the defendant. The court stated that if the jury had been charged that "a person is *presumed* to intend the natural consequences of his own acts" (emphasis added), however, no error would have occurred. *Mann v. United States*, 319 F.2d 404, 409 (5th Cir. 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). To support its reasoning, the *Mann* court cited *Bloch v. United States*, 221 F.2d 786 (9th Cir. 1955), *reh. denied*, 223 F.2d 297 (1955); *Berkovitz v. United States*, 213 F.2d 468 (5th Cir. 1954); and *Wardlaw v. United States*, 203 F.2d 884 (5th Cir. 1953), though in all three cases the disputed charge was that a presumption exists that a person intends the natural consequences of his acts and though each court reversed the conviction because the instruction impermissibly stated that the jury could presume criminal intent as a matter of law from the defend-

ant's actions. Therefore, these precedents were inapposite in *Mann*. Additionally, the *Mann* court stated that giving the charge was reversible error because the charge caused the inference to "become" a presumption, thereby shifting the burden of proof from the prosecution to the defendant. *Mann, supra* at 409.

The *Mann* court's reasoning confuses the distinction between a presumption and an inference. A presumption is a deduction that the trier of fact is required by law to make. A presumption operates to render a defendant's actual intent irrelevant if he has committed those acts that trigger operation of the presumption. Thus, a rebuttal presumption operates to shift the burden of proof to the defendant. An irrebuttable presumption does not afford the defendant any opportunity to overcome the presumption.

An inference, on the other hand, is a deduction that the trier of fact may make based on his own experience but one that he is not required to make. An inference is merely a method by which the trier of fact may determine that the party with the burden of proof has carried it. Thus, an inference does not shift the burden of proof. *Edwards v. United States*, 334 F.2d 360, 366–68 (5th Cir. 1964), *cert. denied*, 379 U.S. 1000, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965); *Knapp v. United States*, 316 F.2d 794, 795–96 (5th Cir. 1963); *Barfield v. United States*, 229 F.2d 936, 939–40 (5th Cir. 1956); McCormick's Handbook of the Law of Evidence 830 (2d ed. E. Cleary 1972); 9 Wigmore, Evidence § 2490, at 286–88 (3d ed. 1940).

When the law authorizes a party to carry the burden of proving a fact by circumstantial evidence, the law merely authorizes the jurors to draw inferences from proven facts. Thus, when seeking to prove a hypothesis, a party may succeed if the jury finds that certain facts have been proved and that, from those facts, the inference naturally follows that the hypothesized fact is true. 1 Wigmore, *supra* at § 25. A danger exists, however, that the proven

facts will be consistent not only with the asserted hypothesis, but also with contradictory hypotheses. Therefore, courts always have exercised care in submitting cases to juries in which proof of essential facts rests entirely on circumstantial evidence. *Montoya v. United States*, 402 F.2d 847 (5th Cir. 1968); *Cohen v. United States*, 363 F.2d 321 (5th Cir.), *cert. denied*, 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303 (1966); *Barnes v. United States*, 341 F.2d 189 (5th Cir. 1965); *Cuthbert v. United States*, 278 F.2d 220 (5th Cir. 1960).

The classic instruction on circumstantial evidence in criminal cases included the charge that the jury could not find the defendant to be guilty unless the evidence excluded every reasonable hypothesis other than guilt. *Anderson v. United States*, 30 F.2d 485 (5th Cir. 1929); *Hendrey v. United States*, 233 F. 5 (6th Cir. 1916); *Garst v. United States*, 180 F. 339 (4th Cir. 1910). In *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), however, the United States Supreme Court held that this additional instruction was merely confusing and incorrect when the jury is instructed properly concerning the defendant's right to be proved guilty beyond a reasonable doubt. Since that decision, the Fifth Circuit consistently has cited *Holland* to reject assignments of error based on the trial court's failure to give the additional instruction. *E. g., United States v. Boerner*, 508 F.2d 1064, 1068–69 (5th Cir.), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2418, 44 L.Ed.2d 681 (1975); *United States v. Stokes*, 471 F.2d 1318, 1321 (5th Cir. 1973); *Bryant v. United States*, 252 F.2d 746, 748 (5th Cir. 1958). Courts, however, occasionally append vestiges of this instruction to modern instructions concerning the treatment of circumstantial evidence. *E. g., Thurmond v. United States*, 377 F.2d 448 (5th Cir. 1967). I believe that the much maligned *Mann* instruction is such an instance.

Although the majority expressly disapproves the clause "so unless the contrary appears from the evidence" used in the *Mann* charge, I view this clause as a cautionary instruction intended for the benefit and protection of the defendant. The condemned admonition neither shifts the burden of proof to the defendant, nor requires the jurors to find criminal intent as a matter of law. Rather, it instructs the jurors that they may not even infer guilt from the evidence if they also might infer innocence. Defendants in criminal cases are entitled to have the jury clearly instructed as to every possible defense. Therefore, although a general charge is given concerning the defendant's right to be proved guilty beyond a reasonable doubt, the jury also should be charged concerning the weight to be given circumstantial evidence subject to more than one interpretation.

The difficulty in formulating an appropriate charge is well illustrated by our court's struggles with the variety of charges given by the district courts since *Mann*. If a judge should charge that the inference of criminal intent must prevail unless the defendant has produced evidence causing the contrary to appear, the judge would err. A defendant is never required to produce any evidence. *Holland v. United States*, 348 U.S. 121, 138–39, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *Yee Hem v. United States*, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); *United States v. Lake*, 482 F.2d 146, 149 (9th Cir. 1973); *United States v. Broadhead*, 413 F.2d 1351, 1361 (7th Cir. 1969), *cert. denied*, 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970). A defendant, however, is entitled to call witnesses, to testify, and to offer other evidence if he so elects. Thus, a charge that would limit the jury's search to the government's evidence also would be improper.

To avoid these pitfalls, the draftsmen whose proposed instruction was adopted by the district court in *Mann* decided that the jury should be charged that if a reasonable hypothesis of innocence appeared from all the evidence in the case, an inference of guilt is unavailable. *Jury Instructions and Forms for Federal Criminal Cases*, 27 F.R.D. 39, Form 4.06 (1960). Nowhere does the instruction suggest that the defendant must introduce evidence supporting a reasonable hypothesis of innocence. Yet he

might do so, and, if he does, his evidence will defeat the inference of guilt just as surely as if the prosecution's evidence was consistent with innocence as well as with guilt.

For these reasons, I am of the opinion that the "so unless the contrary appears from the evidence" clause in the *Mann* charge was a reasonable cautionary instruction, for the benefit of the defendant, where the government had attempted to prove intent by circumstantial evidence.

Nevertheless, it is time to still the waters, troubled since *Mann*. Judge Clark's opinion for the court accomplishes that good purpose, and the jury instruction prescribed in it is good law. It is certainly as good as the instruction condemned in *Mann*.

Therefore, with these special observations, I CONCUR.

GODBOLD, Circuit Judge, with whom TUTTLE and GOLDBERG, Circuit Judges, join, concurring in part and dissenting in part:

I would hold that the *Mann* instruction is reversible error in all instances and would reverse the conviction. This is unabashedly arbitrary. The rule pronounced in the majority opinion purports to be judicially flexible but is no less arbitrary in application—if the *Mann* language is used the court will neither harmonize inconsistent statements nor consider curative statements. In effect, the reviewing court will pretend that other instructions given on the same subject matter were never given at all.

As between a rule "if you say it the case will be reversed," and a rule "if you say it we will decide whether to reverse but in doing so we won't consider anything else you said," I opt for the former. It has at least the advantages of clarity and certainty, and all can tailor their activities accordingly. The court's opinion invites the district courts to continue to roll the dice on possible reversal. If the invitation is accepted, the district court's instruction is then to be reviewed under a standard unrelated to the general law of jury instructions and to everyday human communication.

AINSWORTH, Circuit Judge, with whom RONEY, Circuit Judge, joins, dissenting:

The majority opinion strives with commendable zeal to eliminate the confusion in this circuit which has occurred in jury instructions in criminal cases pertaining to proof of intent resulting from the panel opinion of this Court in *Mann v. United States*, 5 Cir., 1963, 319 F.2d 404, *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). The decisions of various panels of this Court since *Mann* have so greatly eroded the rationale of *Mann* that it became apparent that the ruling in that case had very little vitality left. Now confronted with the golden opportunity really to clear up the confusion, the majority has dropped the ball while crossing the goal line.

The best way to eliminate confusion in these jury instructions is to take a stand long overdue, that is, to overrule the holding in *Mann*. The unacceptable phrase on proof of intent in the jury instructions in *Mann* so often considered by us in subsequent cases, namely, "so unless the contrary appears from the evidence," is not in my view prejudicial to the rights of a defendant nor does it shift the burden of proof to the defendant as has been contended. The instructions are proper and helpful to the jury in cases in which proof of intent is crucial. As Judge Hill points out in his special concurring opinion herein, this clause is actually a cautionary instruction intended for the benefit and protection of the defendant. I agree with Judge Hill that "The condemned admonition neither shifts the burden of proof to the defendant, nor requires the jurors to find criminal intent as a matter of law. Rather, it instructs the jurors that they may not even infer guilt from the evidence if they also might infer innocence. Defendants in criminal cases are entitled to have the jury clearly instructed as to every possible defense. Therefore, although a general charge is given concerning the defendant's right to be proved guilty beyond a reasonable doubt, the jury also should be charged concerning the weight to be given circum-

stantial evidence subject to more than one interpretation."

In *United States v. Wilkinson*, 5 Cir., 1972, 460 F.2d 725, the panel opinion held that "To paraphrase *Mann*, in a criminal case of this nature, the overall effect of the charge did not place a burden upon the defendant to produce evidence to overcome a presumption of guilt." *Id.* at 733.

Now the majority has established instructions for use of the district courts in future cases on proof of intent by deleting the forbidden phrase "so unless the contrary appears from the evidence" but in other respects retaining the instructions we are considering here. The district judges are now informed by this Court's edict that henceforth no district judge in this circuit shall deliver a charge to the jury on proof of intent which is couched in language which could reasonably be interpreted as shifting the burden of proof to the accused to produce proof of innocence. The district courts are informed that such an error "will not be absolved because other phrases defining the proper burden of proof are included in the instructions, no matter how often such corrective phrases are repeated." This is a definite injunction to district judges in this respect.

But despite the admonition that such error "will not be absolved" no matter how often corrective phrases are repeated, in the next paragraph of the majority opinion we read that "We refuse to classify the giving of a charge in violation of paragraph 1, whether objected to or not, as the type of error which will automatically produce reversal." I, of course, agree that there must be no automatic reversal because of use of the prohibited charge. The majority's holding in this respect is mandated by common sense, and by the Supreme Court's rulings on harmless error. However, on the one hand, states the majority, no amount of corrective phrases by a trial judge will cure the error of such a burden-shifting charge; but, on the other, says the majority, reversal on account of this type of error is not automatically produced. Thus we are back where we started before consideration of

the present case, for the majority continues in its opinion that "If, despite our action today, the error should recur, the weighing of its harm to the accused shall remain a judicial matter to be resolved in the context of each case where it occurs." Accordingly, the state of the law on this subject essentially remains unchanged.

All of this could be simply clarified by overruling the panel decision in *Mann*. Now confusion will continue to exist.

The majority's holding that the case must be remanded to the panel with directions to reconsider the rights of the defendants in light of its opinion is inexplicable. We should rule now that the court's instructions in this case so clearly state that the burden of proof is not shifted to the defendants and that the defendants have no obligation to produce any evidence that, despite the giving of the charge, there can be no conceivable reversible error in the circumstances. Thus the convictions should be affirmed.

The present case is very similar to our recent case of *United States v. Roberts*, 5 Cir., 1977, 546 F.2d 596, where the jury charge also contained the forbidden language "so unless the contrary appears from the evidence," but the panel affirmed the conviction and held that the other portions of the judge's charge placed the burden of proof on the Government. We referred in *Roberts* (footnote 3) to those portions of the court's charge, as follows:

> For example, instructions that the law presumes a criminal defendant to be innocent of crime; that the presumption of innocence alone is sufficient to acquit a defendant unless the jury is satisfied beyond a reasonable doubt of defendant's guilt; that the burden is always upon the Government to prove guilt beyond a reasonable doubt; and that the burden never shifts to a defendant to produce any witnesses or any evidence.

To the same effect *see also, e. g.,* our prior decisions in *United States v. Duke*, 5 Cir., 1976, 527 F.2d 386 (Morgan, J.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976); *Helms v. United*

*States*, 5 Cir., 1964, 340 F.2d 15 (Rives, J.), *cert. denied*, 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965); *United States v. Jenkins*, 5 Cir., 1971, 442 F.2d 429 (Bell, J.); *United States v. Beasley*, 5 Cir., 1975, 519 F.2d 233 (Clark, J.); *United States v. Durham*, 5 Cir., 1975, 512 F.2d 1281 (Coleman, J.).

The same thing happened in this case as happened in *Roberts*. As the Government points out in its supplemental brief, the court's instructions in this case were clear on presumption of innocence, the Government's burden of proof and the right of a defendant not to call any witnesses. At the opening of the trial the district court instructed the jury in part (R. 33):

> After that the Government will introduce its witnesses and its evidence, present its case.
>
> Following that, the defendant may or may not produce any evidence. A defendant does not have to do so. A defendant really doesn't even have to cross examine the Government's witnesses. The Government has the burden of proving guilt beyond a reasonable doubt before a jury can return a verdict of guilty. And there is no imposition upon a defendant of calling any witnesses or producing any evidence.

The court was careful to state that "The jury should not single out any one single instruction or ignore any one instruction, but consider all of them as stating the law applicable to the case." (R. 34)

Then the court further pointed out (R. 35):

> The law presumes a defendant to be innocent of crime, thus a defendant, although accused, begins the trial with a clean slate—with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against an accused. So, the presumption of innocence alone is sufficient to acquit a defendant unless the jury is satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

The court continued in its instructions (R. 36):

> The burden, as I said, is always upon the prosecution to prove guilt beyond a reasonable doubt. If the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence and the other of guilt, the jury should, of course, adopt the conclusion of innocence.

In its final instructions to the jury in this case, the court repeated some of its charge, stating (R. 589):

> The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence and no adverse inferences may be drawn from the failure to do so.

Further, the court said (R. 590):

> The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Then the court said to the jury (R. 593):

> The Government is required to establish each of these elements beyond reasonable doubt. The law never imposes on the defendant in a criminal case the burden of introducing any evidence or calling any witnesses.

It is clear that the district judge in this case in his jury instructions carefully and scrupulously time and again referred to the presumption of innocence accorded a defendant, to the necessity of proving guilt beyond a reasonable doubt, also that the Government must bear the burden of proof at all times throughout the case to establish guilt beyond a reasonable doubt, and that the burden never shifted and that the defendants were not obliged to produce evidence of any kind in support of their case. Under these circumstances, the majority cannot justify its conclusion that the case should be remanded to the panel for further

consideration. Accordingly, the judgment appealed from should be affirmed.[1]

---

1. Nor would I remand for a district court inquiry into the alleged misconduct of a juror concerning remarks about defendant's counsel. It was stipulated what had occurred, 546 F.2d at 138, and the circumstances do not warrant interference with the district judge's discretion in the matter. A further inquiry or investigation at that point would have seriously disrupted the trial. *See Tillman v. United States*, 5 Cir., 1969, 406 F.2d 930; *United States v. Hendrix*, 9 Cir., 1977, 549 F.2d 1225; *United States v. McKinney*, 5 Cir., 1970, 429 F.2d 1019.